Terry S. LAMBERT, Plaintiff,

v.

R.T. McFARLAND, Individually and as a City of Atlanta Police Officer; T.B. Powell, Individually and as a City of Atlanta Police Officer; M.V. Johnson, Individually and as a City of Atlanta Police Officer; City of Atlanta, Georgia; Morris Redding, In His Official Capacity as Chief of the Bureau of Police Services, Department of Public Safety, City of Atlanta, Defendants.

Civ. A. No. C83–1131A.

United States District Court, N.D. Georgia, Atlanta Division.

Oct. 17, 1984.

On Renewed Motion for Summary Judgment June 18, 1985.

1254

Mark A. Hall, Bondurant, Miller, Hishon & Stephenson, Atlanta, Ga., for plaintiff.

George R. Ference, Atlanta, Ga., for defendants.

## ORDER

FORRESTER, District Judge.

The plaintiff has brought this action pursuant to 42 USC § 1983, with several pendent state law claims. Paragraph 29 of the complaint alleges that the defendants have violated plaintiff's rights under the fourth, fifth, sixth, eighth, and fourteenth amendments to the United States Constitution. The complaint further alleges that the defendants are liable to the plaintiff under Georgia law for false arrest, false imprisonment, intentional infliction of emotional distress, malicious use of process, malicious abuse of process, and negligence. Complaint, ¶¶ 33–35. The defendants are three City of Atlanta police officers (Johnson, Powell, and McFarland), the Chief of the Bureau of Police Services of the Atlanta Department of Public Safety (Redding), and the City of Atlanta. The three police officers are sued both individually and in their official capacities; defendant Redding is sued only in his official capacity. The case is now pending before the court on cross motions for summary judgment.

## I. STATEMENT OF THE FACTS.

The relevant undisputed facts appear as follows. On September 11, 1982, plaintiff Lambert was one of seven persons arrested without a warrant by defendants McFarland, Powell, and Johnson. At the time of the arrest, the officers seized several hand-rolled cigarettes or cigarette butts containing a leafy substance, three plastic bags containing yellow powder, and a plastic bag containing other small bags filled with white powder. State Crime Lab Report, Attachment 11 to Plaintiff's Motion for Summary Judgment. The arrestees were placed in a police wagon and taken to the city jail. Lambert Deposition at 204–06. On arrival, the back door to the wagon was jammed, apparently due to tampering by one or more of the occupants, and the officers removed the arrestees through the front of the van. Lambert Deposition at 202. Lambert was charged with four offenses: disorderly conduct under section 17–3001(6) of the City Code of Ordinances (presence in a location with illegal narcotics); possession of marijuana, section 17–8003 of the City Code of Ordinances; criminal damage to property, section 17–1001(a) of the City Code of Ordinances; and violation of the Georgia Controlled Substances Act, Schedule I. Defendants' Answer to Plaintiff's First Interrogatory Number 2.[1]

The date of plaintiff's arrest, September 11, 1982, was a Saturday. At the time of the arrest Officer McFarland completed a summons which set the plaintiff's court date to be Monday, September 13, at 3:00 p.m. Exhibit 5 to Plaintiff's Motion for Summary Judgment. It is the City of Atlanta's policy that the arresting officer sets the time for the initial hearing at the time of the arrest. Defendants' Answer to Plaintiff's First Interrogatory Number 24. The plaintiff was taken before Judge Mickle, a municipal court judge, at 3:00 p.m. on Monday, September 13. At that time, bond was set for the four offenses with which plaintiff was charged as follows: On the disorderly conduct charge, $100; for possession of marijuana, $300; for criminal damage to property, $300; for the violation of the Georgia Controlled Substances Act, $500. Defendants' Answer to Plaintiff's First Interrogatory Number 3. The officer

---

**1.** Defendants' Answer to Plaintiff's Interrogatory Number 2 indicates that the charge of violating the Georgia Controlled Substances Act related to possession of heroin with intent to distribute. However, documentary evidence of record reflects that the actual summons which was issued to the plaintiff by the arresting officer, McFar-land, made no reference to intent to distribute. Exhibit 5, Plaintiff's Motion for Summary Judgment. At the municipal court, the charge was entered on the municipal court's computer as possession of heroin with intent to distribute. Exhibit 7, Plaintiff's Motion for Summary Judgment.

scheduled to appear at the preliminary hearing, Officer McFarland, was not present since Monday was his day off. Transcript of Hearing of September 13, 1982, Exhibit 8 to Plaintiff's Motion for Summary Judgment. At that hearing, Judge Mickle declined to hear the facts of the case since the arresting officer was not present. Also at the hearing on September 12, one of plaintiff's co-defendants requested an analysis of the suspected drug substances by the State Crime Lab. Exhibit 8 to Plaintiff's Motion for Summary Judgment. Pursuant to a motion by the city solicitor, Judge Mickle reset the date for the preliminary hearing until October 27, 1982. Plaintiff Lambert, being indigent, was unable to make bond and was held in the city jail until October 27, 1982. Lambert Deposition, p. 211.

The City Code of Ordinances, a certified copy of which is attached as Exhibit G to Defendants' Motion for Summary Judgment, provides at section 3–1071 that: "Where the ends of justice may require, all cases may be continued; provided, however, that in ruling upon requests for continuances, the judge shall use his sound discretion in applying the general rules governing continuances." It is the practice of the municipal court that when defendants charged with drug-related offenses request an analysis of the substance by the State Crime Lab, the case is reset for six to eight weeks to allow time for the analysis and the report. Defendants' Answer to Plaintiff's First Interrogatory Number 32. In responding to plaintiff's second set of interrogatories, number 19, the City elaborated:

> Probable cause hearings are delayed if the defendants request a crime lab analysis. The request is considered a legal reason for a continuance. It is extremely rare for a hearing to proceed if the request is made. The only instance in which this request may be denied is if the defendant or his attorney has stipulated that the alleged substance is what the prosecution purports it to be at a previous court appearance.

Whether a defendant requests a lab analysis of a suspected drug substance or not, all suspected drug substances contained in evidence packages bearing the name of an arrested person are sent by the City of Atlanta Police for analysis. Defendants' Answer to Plaintiff's First Interrogatory Number 9(d).

The suspected drug substances in the Lambert case were delivered to the State Crime Lab on September 16, 1982. Exhibit 11 to Plaintiff's Motion for Summary Judgment. The State Crime Lab issued its report on October 2, 1982, which concluded that none of the submitted substances were illegal drugs. Exhibit 11 to Plaintiff's Motion for Summary Judgment. The only known copy of this report was sent to Officer McFarland. Defendants' Answer to Plaintiff's First Interrogatory Number 16. His copy of the crime report was picked up from the State Crime Lab on October 7, 1982, and was routed to the appropriate officer on October 7, 1982. Defendants' Answer to Plaintiff's Second Interrogatory Number 7. Officer McFarland did not notify anyone of the negative crime lab analysis of the suspected drug substance in the Lambert case until October 27, 1982, Lambert's next scheduled court date. McFarland Deposition at p. 216–17. Neither the prosecuting solicitor nor the court was informed that the crime lab report was negative until October 27, 1982. Defendants' Answers to Plaintiff's First Interrogatories Numbers 17 and 18. According to the City's usual practice and procedure, neither the court, the city solicitor, the defendant, or the defendant's attorney is informed that a crime lab report is negative until the next regularly scheduled hearing date. Defendants' Answer to Plaintiff's Interrogatory Number 10. It is also the policy of the City of Atlanta that all drug-related charges are dismissed upon learning that the crime lab analysis was negative. Defendants' Answer to Plaintiff's Second Interrogatory Number 17.

On October 27, 1982, a second hearing was held in plaintiff's case. At that time, the three drug-related charges (disorderly conduct, possession of heroin, and posses-

sion of marijuana) were dismissed because of the negative crime lab analysis. Exhibit 5 to Plaintiff's Motion for Summary Judgment. Plaintiff Lambert was convicted on the charge of criminal damage to property and sentenced to ten days, which he had already served. Exhibit 9 to Plaintiff's Motion for Summary Judgment. On April 27, 1983, Municipal Judge Harris reconsidered and retried the criminal damage to property charge and dismissed it upon Lambert's offer of evidence that one of his co-defendants had inflicted the damage on city property (i.e., the police van). Exhibit 10 to Plaintiff's Motion for Summary Judgment.

The primary disputed factual area in this case relates to the circumstances surrounding the arrest of the seven defendants on September 11, 1982. In their pleadings, both parties acknowledge that there are disputed questions of material fact with respect to the circumstances surrounding the arrest; however, the City of Atlanta has moved for summary judgment as to its liability for plaintiff's arrest, arguing that plaintiff's version of the facts does not establish that any illegality in the arrest was a result of a city policy or practice.

## II. THE CONTENTIONS OF THE PARTIES.

### A. *Plaintiff's Motion for Partial Summary Judgment.*

The plaintiff has moved for partial summary judgment on the question of liability for his confinement. Plaintiff's brief in support of his motion for partial summary judgment contains a succinct statement of his contentions:

Plaintiff now moves for partial summary judgment, to establish as a matter of law that his six-week confinement was unconstitutional and that Defendants City of Atlanta, Police Chief Morris Redding, and Officer R.T. McFarland are liable therefor. The most blatantly unconstitutional portion of Mr. Lambert's confinement is the final three weeks, because, pursuant to City policy, Officer McFarland delayed for three weeks reporting to anyone the conclusive results of the neg-

ative Crime Lab report showing that the suspected substances were not drugs. The first three weeks of Mr. Lambert's confinement are equally unconstitutional because he was never given a prompt judicial determination of probable cause as required by *Gerstein vs. Pugh,* 420 U.S. 103 [95 S.Ct. 854, 43 L.Ed.2d 54] (1975), in cases of warrantless arrests. This failure to provide the mandatory probable cause hearing is due both to the City's policy of delaying probable cause determinations for six to eight weeks if a defendant wishes to challenge the identification of suspected drug substances and due to Officer McFarland's failure to appear at the initial hearing.

Plaintiff's Brief in Support of Motion for Partial Summary Judgment, pp. 1–2.

### B. *The Defendants' Motion for Summary Judgment.*

The City of Atlanta and the three individual police officers have moved for summary judgment on several issues. First, they have cross-moved for summary judgment on the question of the City's liability for the plaintiff's confinement. The defendants argue that plaintiff's confinement was a result of the exercise of discretion on the part of the municipal court judge, such that neither the City of Atlanta nor the three individual officers can be held responsible. The City argues that whether to continue a probable cause hearing is in the discretion of the municipal court judge, pursuant to the ordinance detailed above in the Statement of Facts. In addition, the City argues that as to the state offenses involved in this case, the municipal court was acting as a committal court for the State, and not effectuating City policy.

The City has further argued that it is entitled to summary judgment that it is not liable for any constitutional violation arising from plaintiff's arrest, and the search and seizure pursuant thereto, since any such violation was not the result of City policy, citing *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Third, the City and

the officers have moved for summary judgment that they are not liable for plaintiff's alleged injuries because said injuries were caused by plaintiff's own failure to assert his rights and not by any policy of the City's. Fourth, the City argues that it is entitled to summary judgment that the plaintiff was not denied his constitutional right to a speedy trial under the sixth amendment, and that there was no constitutional violation of the eighth amendment in the amount of bail set by Judge Mickle.

The City has also moved for summary judgment on those allegations of plaintiff's complaint which assert that his confinement in the city jail was unconstitutional as a result of the physical conditions existing in the jail. This argument takes two forms: First, the City argues that under *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the plaintiff has access to adequate state remedies for any alleged deprivations at the jail; and second, the City argues that it was not its policy, or any act by the individual officers, which created the allegedly unconstitutional conditions at the jail, since the City's policy is that the jail must be kept in a sanitary condition, and that adequate health care must be provided. Finally, the defendants argue that they are entitled to summary judgment that the plaintiff does not have standing to seek injunctive relief before this court, under the standard recently enunciated by the Supreme Court in *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

In a separate motion for summary judgment, defendant Morris Redding has moved for summary judgment on all claims against him, alleging that the plaintiff has failed to demonstrate sufficient evidence to create supervisory liability under the standards applicable in the Eleventh Circuit, as enunciated in *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

## C. *Plaintiff's Response.*

The plaintiff has filed a motion to exceed this court's usual page limits, accompanied by a lengthy response which covers both the City's arguments opposing plaintiff's motion for partial summary judgment, and responds to the City's arguments in favor of its motion for summary judgment. As a preliminary matter, the court would note here that the motion by the plaintiff to exceed the page limits set by the court is GRANTED. The following resolution of the pending motions for summary judgment is based on the court's review of all pleadings filed in this case, and all depositions and other discovery materials filed with the Clerk of Court for use in considering these motions for summary judgment.

## III. DISCUSSION.

Having reviewed the parties' pleadings, the court concludes that there are nine issues contained within these cross motions for summary judgment. These are as follows: (1) whether any or all of the defendants are liable for the entire six-week period of plaintiff's confinement on the theory that the confinement was unconstitutional since plaintiff did not receive a prompt probable cause determination; (2) whether any or all of the defendants are liable for the last three weeks of plaintiff's confinement as a result of the procedures in place for handling negative state crime lab drug analyses; (3) whether any or all of the defendants are liable for alleged constitutional violations in plaintiff's arrest and the subsequent search and seizure; (4) whether any of the injuries allegedly suffered by plaintiff were plaintiff's responsibility due to failure to assert his rights; (5) whether plaintiff was denied a speedy trial, and if so, whether any or all of the defendants are liable for that wrong; (6) whether plaintiff suffered a constitutional deprivation in the amount of bail which was set for him, and if so, whether any or all of the defendants are liable therefor; (7) whether *Parratt v. Taylor* precludes plaintiff's claim based on the conditions existing in the Atlanta City Jail; (8) whether, apart from *Parratt*, any or all of the defendants are liable for the injuries plaintiff allegedly suffered as a result of the conditions in the city jail; and (9) whether plaintiff has

standing to seek an injunction in this case. These issues, and the court's resolution of them, shall be treated *seriatim*. In the interest of clarity, however, the court will at this point provide a general framework of section 1983 law against which the merits of the various motions for summary judgment will be weighed.

■ Title 42 of the United States Code, Section 1983, provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The plain language of the Act contemplates that there must be some showing of causation between the acts taken under color of state law and the alleged constitutional deprivation. Absent such a causal link, the party taking the action under state law cannot be held liable. *See Parratt v. Taylor*, 451 U.S. 527, 537 n. 3, 101 S.Ct. 1908, 1914 n. 3, 68 L.Ed.2d 420 (1981) (the court assumes the requisite causal link between defendants' negligence and plaintiff's loss); and *Reimer v. Smith*, 663 F.2d 1316 (5th Cir.1981), in which the present Fifth Circuit cited this footnote from *Parratt* as standing for the proposition that "it is axiomatic that a plaintiff cannot succeed in a section 1983 action if he fails to demonstrate a causal connection between the state official's alleged wrongful action and his deprivation of life, liberty, or property." *Id.* at 1322 n. 4. Therefore, as to each of the named defendants, the plaintiff must establish that that defendant's conduct was the cause of the deprivation of a right, privilege, or immunity secured by the United States Constitution or federal law. The court points this out in view of the fact that plaintiff's complaint appears to allege that each and every defendant is respon-

sible for each and every constitutional violation alleged by the plaintiff. As shall be seen below, this is not the case.

■ With respect to any liability on the part of the City of Atlanta, such liability must be measured by the standards set out by the Supreme Court in *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611. In *Monell*, the Court held that local government bodies, and local government officials sued in their official capacity, may be held liable under section 1983 for monetary, declaratory, or injunctive relief where the action alleged to be unconstitutional "... implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690, 98 S.Ct. at 2035. Moreover, the City may be liable for deprivations incurred due to government "custom" even though such custom has not obtained the form of an official policy. *Id.* at 691, 98 S.Ct. at 2036. However, *Monell* also pointed out that a local government body cannot be held liable under a theory of *respondeat superior*. *Id.* Therefore, in the present case, the City will be held liable only for those injuries which the plaintiff can demonstrate result from "... execution of a government's policy or custom, whether made by lawmakers or by those whose edicts or acts may fairly be said to represent official policy...." *Id.* at 694, 98 S.Ct. at 2037.

With respect to the potential liability of Police Chief Redding, the parameters by which this court must judge his conduct have been explained in numerous cases within this circuit. The former Fifth Circuit noted in *Sims v. Adams*, 537 F.2d 829 (5th Cir.1976), that two of the possible theories under which a supervisor could be held liable under section 1983 are personal participation in the activity, and breach of a duty imposed by state or local law. 537 F.2d at 831. In addition, *Sims* held that a supervisor may be held liable if he has notice of past culpable conduct by his subordinates and fails to prevent a recurrence. *Id.* at 832. In *Wanger v. Bonner*, 621 F.2d

675 (5th Cir.1980), rehearing denied, the Fifth Circuit somewhat limited the standards for supervisory liability. Specifically, the court held that "failure to adopt policies to prevent constitutional violations ... would not be an adequate basis for liability under section 1983." *Id.* 436 U.S. at 680, 98 S.Ct. at 2030, citing *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). The court in *Wanger* held the supervisory sheriff liable on the grounds that he had hired deputies to serve arrest warrants after midnight, and that such warrants were served pursuant to affirmative policies which the sheriff had promulgated. 621 F.2d at 680–81.

■ Since defendant Redding is sued in his official capacity only, the *Monell* standard imposing liability for acts carried out pursuant to a policy statement, ordinance, regulation, or custom is also applicable to Redding. *See Monell,* 436 U.S. at 691–92, 98 S.Ct. at 2036 and *McQurter v. City of Atlanta,* 572 F.Supp. 1401 (N.D.Ga.1983). Finally, a supervisor may be held liable for acts of subordinates if he fails to perform proper training and supervisory duties. *McQurter,* 572 F.Supp. at 1419, citing *Beverly v. Morris,* 470 F.2d 1356 (5th Cir.1972).

Against the foregoing background, the issues raised by the motions for summary judgment will now be treated in the order given above.

1. *Plaintiff's Six-Week Confinement; Liability for Confinement Without a Probable Cause Hearing.*

The plaintiff has moved for summary judgment on the question of the defendants' liability[2] for his confinement without probable cause determination. In order to determine whether the plaintiff was deprived of his liberty without due process of law, it is necessary to determine what process is due for an individual who is arrested without a warrant. The United States Supreme Court addressed this question in

*Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). In that case the Court held that where an individual was arrested without a warrant, "... a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest." *Id.* at 113–14, 95 S.Ct. at 862–63. Beyond this brief period of detention, however, "... the fourth amendment [to the United States Constitution] requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following [the] arrest." *Id.* at 114, 95 S.Ct. at 863. The Court noted the potentially serious consequences of prolonged pretrial detention, and held that the independent judgment of a neutral and detached magistrate on the question of whether there was probable cause to detain an individual is constitutionally required.

> ... [The state] must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest.

*Id.* at 125, 95 S.Ct. at 868 (footnote omitted).

The Court in *Gerstein* addressed the type of procedures necessary in making the judicial determination of probable cause. The Court held that no adversary hearing was required. 420 U.S. at 120, 95 S.Ct. at 866. In fact, there is apparently no requirement that the defendant be present at this determination. As the Court noted in *Gerstein,* determinations of probable cause where a warrant is sought before the arrest have traditionally been made by a magistrate in a non-adversary proceeding, without the suspect's presence, and at which the magistrate may accept hearsay and written testimony. *Id.* The central point of *Gerstein* is simply that before an

---

**2.** In his brief in support of his motion for partial summary judgment, at footnote 2, the plaintiff expressly reserves the right to argue that defendants Powell and Johnson are liable for his allegedly unconstitutional confinement, but concedes that he is not moving for summary judgment on this issue as to them. Therefore, plaintiff's motion is limited to the question of the liability of the City, Redding, and McFarland.

extended deprivation of liberty is justified, a neutral and detached magistrate must pass upon the question of whether there is probable cause for the detention. *See also Baker v. McCollan*, 443 U.S. 137, 143, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1978).

Georgia law also speaks to the question of a prompt determination of probable cause. In a law passed in 1956, substantially pre-dating *Gerstein*, the following provision is contained:

> In every case of an arrest without a warrant, the person arresting shall, without delay, convey the offender before the most convenient judicial officer authorized to receive an affidavit and issue a warrant.... No such· imprisonment shall be legal beyond a reasonable time allowed for this purpose; and any person who is not brought before such judicial officer within 48 hours of arrest shall be released.

O.C.G.A. § 17–4–62. Although the statute uses the language "brought before" a magistrate, a recent decision of the Georgia Supreme Court clarifies that the judicial officer must review the detention and be satisfied that probable cause exists. *Dean v. State*, 250 Ga. 77, 295 S.E.2d 306 (1982).

■ It is apparent to this court that an individual who· is arrested without a warrant is entitled to have a judicial officer make a determination of probable cause within a prompt period after the arrest. This determination may be *ex parte*, and it may be based simply upon an affidavit presented by the arresting officer or other authorized official, but such a determina-

tion must be made. If a prompt judicial determination of probable cause is not made, then an extended deprivation of liberty following a warrantless arrest constitutes deprivation of liberty without due process of law. *Gerstein v. Pugh, supra; Bernard v. City of Palo Alto*, 699 F.2d 1023 (9th Cir.1983).

Applying these standards for the degree of process due upon a warrantless arrest to the facts of the present case, it is apparent that plaintiff Lambert was deprived of liberty without due process. He was arrested on September 11, 1982. No determination of probable cause was made by a judicial officer until October 27, 1982.[3] The sole question remaining, then, is whether any or all of the defendants before this court are liable for the unconstitutional deprivation of plaintiff's liberty. In order to be liable for the unconstitutional deprivation, as noted above, the defendant must be shown to have been the cause of the detention. The facts of the present case as currently constituted before this court do not permit the court to determine with any certainty which, if any, of the defendants were the "cause" of plaintiff's detention.

In *Bernard v. Palo Alto, supra*, the Ninth Circuit held in a similar case that because the county was the jailer of the plaintiff, the county had the power to release arrestees who were unconstitutionally detained, thus imposing liability under section 1983. 699 F.2d at 1027. No facts of record in the present case demonstrate who is responsible for detention of individu-

---

**3.** Both parties appear to assume that the preliminary hearing required by O.C.G.A. § 17–7–23 is the only way in which a probable cause determination can be made. While O.C.G.A. § 17–7–23 does provide *a* mechanism for a probable cause determination, this does not necessarily satisfy the *Gerstein* requirement. The time and place of a preliminary hearing is in the discretion of the presiding judge, O.C.G.A. § 17–7–20, while *Gerstein* requires a prompt probable cause determination in cases of warrantless arrest. Moreover, the § 17–7–23 hearing is a statutory right, not a constitutional one. *Jackson v. Smith*, 435 F.2d 1284 (5th Cir.), *cert. denied*, 402 U.S. 947, 91 S.Ct. 1639, 29 L.Ed.2d 116 (1971).

Under *Gerstein*, on the other hand, a person arrested without a warrant has a constitutional right not to be detained for a prolonged period without a probable cause determination. While a statutory preliminary hearing may be delayed, O.C.G.A. § 17–7–24, *Gerstein* demands that a defendant arrested without a warrant not be deprived of liberty for a prolonged period unless a prompt determination of probable cause has been made. For this reason, it is largely irrelevant that plaintiff Lambert's statutory preliminary hearing was delayed. The issue is whether a prompt determination ·of probable cause was made by a neutral and detached magistrate. In his case, it was not.

als in the City of Atlanta.[4] Thus, significant questions of material fact remain unanswered on the state of this record. Specifically, the record is silent as to whether it is the policy and practice of the City of Atlanta to detain people who have not received a prompt determination of probable cause after a warrantless arrest. The record is also silent as to whether Police Chief Redding, sued in his official capacity only, has propagated any policy of detention, or, indeed, whether he has any control over detention at all.

With respect to the individual officers, there is no factual basis on which the court could conclude that any of the officers had any control over plaintiff's detention. It seems likely, however, that once the officer surrendered the plaintiff to the city jail he ceased to be the actual custodian of the plaintiff. If this is demonstrated by the evidence, then the arresting officers could not be liable for any custody which occurred after they lost control over the plaintiff's detention. *See Mundy v. State of Georgia,* 586 F.2d 507 (5th Cir.1978) (officer not liable for incarceration over which he had no control).

The court concludes that plaintiff was unlawfully confined after that brief period of time it took to process his warrantless arrest administratively.[5] Plaintiff's motion for summary judgment on the question of liability, however, is DENIED, inasmuch as there is no adequate factual basis in this record for the court to determine which, if any, of the defendants was responsible for plaintiff's detention. This denial of plaintiff's motion is made with leave to renew upon a showing by the plaintiff of undisputed facts which enable this court to determine who bears responsibility for the detention in this case. In view of the recasting of the issues in this case necessitated by this order, the court will permit 30 days of discovery limited to the question of where responsibility for detention lies in the City of Atlanta criminal justice process. Should the plaintiff choose to renew the motion for summary judgment, said motion shall be due 15 days from the end of the extended discovery period. The City shall then have 20 days to respond to any renewed motion by the plaintiff.

The court wishes to address the reliance placed by the plaintiff on cases which the court would generically term "section 1983 false imprisonment cases." These include *Whirl v. Kern,* 407 F.2d 781 (5th Cir.1969); *Bryan v. Jones,* 530 F.2d 1210 (5th Cir. 1976) (en banc), *cert. denied,* 429 U.S. 865, 97 S.Ct. 174, 50 L.Ed.2d 145 (1976), and *Douthit v. Jones,* 619 F.2d 527 (5th Cir. 1980). The United States Supreme Court in *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), faced an allegation that false imprisonment stated a

---

**4.** The plaintiff has attempted to demonstrate that the City is liable for his detention by virtue of showing that the City is responsible for the delay in the probable cause hearing. Specifically, the plaintiff argues that two city policies, that of not requiring the arresting officer to attend a preliminary hearing on his day off, and that of postponing preliminary hearings when a drug lab analysis is requested, were responsible for the delay in his probable cause determination. The plaintiff's argument has led the defendants to oppose the motion for summary judgment on the grounds that continuances of probable cause hearings are in the discretion of the municipal court judges. Both parties have failed to differentiate between (1) the lack of a probable cause hearing, and (2) *confinement* without a probable cause hearing in cases of warrantless arrests. The right protected by *Gerstein* is not the right to a hearing. Rather, *Gerstein* holds that significant *detention* without a probable cause determination is unconstitutional. The failure

of an officer to appear at a committal hearing, or the continuance of a committal hearing, does not directly deprive the plaintiff of his right to due process. The cause of plaintiff's injury was not delay in having a probable cause determination. The cause of plaintiff's injury was that he was detained without a probable cause determination.

**5.** With respect to the brief period of detention while plaintiff's warrantless arrest was processed administratively, a determination of liability is not possible until the numerous questions of material fact regarding the circumstances of the arrest are resolved. If it is shown that no probable cause to arrest him existed, then this portion of the detention would be unconstitutional. *Garris v. Rowland,* 678 F.2d 1264 (5th Cir.1982), *cert. denied sub nom City of Ft. Worth, Texas v. Garris,* 459 U.S. 864, 103 S.Ct. 143, 74 L.Ed.2d 121 (1982).

claim under section 1983. The Court in that case disapproved the tort analysis which the Fifth Circuit had employed in determining that an allegation of false imprisonment stated a claim under section 1983. 443 U.S. at 142, 99 S.Ct. at 2693. The Supreme Court has noted that section 1983 is not to be regarded as a font of tort law. *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1975). In *Baker,* the Court held that in analyzing a detention case, the focus of the court should be on whether the detained person was deprived of liberty without due process, not whether common law tort standards of false imprisonment were met. 443 U.S. at 142, 99 S.Ct. at 2693. It is this court's view that *Baker* casts substantial doubt on the continuing validity of the *Whirl/Bryan* type analysis. Section 1983 provides a cause of action only for unconstitutional acts, not for acts which are merely tortious under state law.

In summary, plaintiff's motion for summary judgment on the question of the City's liability is DENIED with leave to renew. The existence of questions of material fact similarly precludes granting the defendants' motion for summary judgment on this issue, and such motion is also DENIED.

*2. The Last Three Weeks of Confinement, Relating to the Laboratory Report.*

The plaintiff has moved for summary judgment that the City of Atlanta, defendant Redding, and defendant McFarland are all liable for the last three weeks of his confinement on the basis of McFarland's failure, pursuant to the Bureau of Police Services' policy, to inform anyone that the suspected drug substances in this case in fact were not drug substances. The City has made no meaningful response to this argument, except to point out that it is not responsible for the State Crime Lab's procedures. Even conceding this, the fact remains that it is undisputedly the policy and practice of the City of Atlanta, by and through its Bureau of Police Services and individual officers executing that policy, not to inform anyone in a position to release a defendant charged with drug-related violations that the substances in fact are not drugs. Defendants' Answer to Plaintiff's Interrogatory Number 10. Moreover, as noted above, it is also the policy and practice of the City of Atlanta that when a State Crime Lab report is negative, drug-related charges are dismissed.

It appears to the court that were the only charges against the plaintiff in this case drug-related, the defendants would be liable for an unconstitutional detention of the plaintiff after charges should have been dismissed. *See Bryan v. Jones,* in which liability was imposed for unconstitutional detention which resulted from a record-keeping system inadequate to assure that individuals against whom no charges were pending were released. 530 F.2d 1210. However, the basis of plaintiff's argument in favor of summary judgment on this issue is that he would not have been confined but for the manner in which the City processes negative crime lab reports. The record fails to support this causal link. The plaintiff was not charged solely with drug-related offenses, but was also charged with a criminal damage to city property offense, for which bond was set at $300. Absent some showing by the plaintiff that he could have made the $300 bond on the criminal damage to property charge, and therefore been released when the negative drug reports came in, the court concludes that it cannot hold as a matter of law that the defendants are liable for the last three weeks of plaintiff's confinement. Therefore, plaintiff's motion for summary judgment on this issue is DENIED.

*3. Liability of the City and Morris Redding for Plaintiff's Arrest.*

The defendants the City of Atlanta and Morris Redding have moved for summary judgment that they are not, as a matter of law, liable to the plaintiff on his claim of false arrest. The essential elements of the plaintiff's complaint of false arrest are that the defendant officers arrested him without probable cause, and that this was due to failure of the defendants the City and Redding to train the

officers adequately in the elements of drug identification and the requisites for probable cause. Any liability as to Morris Redding, as noted above, would be the type of supervisory liability imposed for failure to train adequately those executing the City's business. The City's liability, plaintiff's argument goes, is that it is the City's policy not to provide adequate training, so that liability is proper under *Monell.* For purposes of resolving the City's and Redding's motions for summary judgment on this issue, the court will assume that the arrest was in fact made without probable cause, accepting the non-movant's version of the facts. The City has argued that police recruits receive 20 hours of instruction in criminal procedure, which include the definition in "practical application" of probable cause. Defendants' Answer to Plaintiff's First Interrogatory Number 2. In support of its motion for summary judgment, the City has submitted excerpts from the training manual which is used in instructing officers on probable cause. Attachment 2 to Exhibit A of Defendants' Motion for Summary Judgment. Additionally, the City of Atlanta has shown that officers receive four hours of training in drug identification. Johnson Deposition, pp. 8, 18.

The Eleventh Circuit Court of Appeals has recently addressed the question of liability on the basis of improper training in *Gilmere v. City of Atlanta,* 737 F.2d 894 (11th Cir.1984). The court in that case reversed the district court's holding that the public safety department's "gross negligence in training" the police officer in question would suffice to render the City liable under the *Monell* standard. *Id.* at 903. The court held that the evidence in *Gilmere* showed that the City had no official policy or custom of selecting or training its police officers improperly. In a footnote, the court noted "that [the] officer ... may have been ignorant of a number of police procedures did not establish that the city had an official policy or custom of putting untrained officers on the streets." *Id.* at 903, note 27. The court went on to find that the evidence presented by the plaintiff in *Gilmere* established only that

there was an isolated incident in which the police officer used excessive force to restrain an arrestee, but that the plaintiff did not show that this incident was the product of a city or police custom to use excessive force. *Id.* at 904. Citing the new Fifth Circuit case of *Bennett v. City of Slidell,* 728 F.2d 762 (5th Cir.1984) (en banc), the Eleventh Circuit in *Gilmere* held that "occasional acts of untrained policemen standing alone are not attributable to city policy or custom." *Id.* at 904, citing *Bennett, supra,* at 768, n. 3.

The City relies on *Gilmere* in support of its motion for summary judgment on this issue. However, *Gilmere* is readily distinguishable from the case at bar. In *Gilmere,* the plaintiff sought to impose liability on the City for failing to train one police officer. The court held that such did not state a claim for supervisory liability since it did not establish a custom or practice of not training police officers. Plaintiff's allegations in the present case, however, are significantly different from those in *Gilmere.* Plaintiff in the present case alleges that it is the general practice of the City of Atlanta not to train adequately any of its police officers. *See Languirand v. Hayden,* 717 F.2d 220 (5th Cir.1983), rehearing and rehearing en banc denied, in which the court noted that in order to have "failure to train" liability, the plaintiff must establish a general pattern that police officers are not trained in the specific area. The defendants have argued, without evidentiary support, that the training provided is adequate. The plaintiff has argued, also without support, that it is inadequate. This matter is not properly supported for a motion for summary judgment. It is disputed whether the City's training is adequate.

Should a jury find that the policy of the City of Atlanta of training its officers in drug identification and the elements of probable cause are inadequate, then the City and Redding may be liable in their supervisory capacities. The Supreme Court has described *Monell* as having "held that official policy must be 'the moving force of the constitutional violation' in

order to establish the liability of a governmental body under section 1983." *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981). *Polk County* further notes that "a general allegation of administrative negligence fails to state a constitutional claim cognizable under section 1983." *Id.* at 326, 102 S.Ct. at 454. The court concludes that plaintiff's complaint in the present case alleges more than general administrative negligence in training officers; the plaintiff has asserted that there is a policy in the City of Atlanta of giving police officers inadequate training in drug identification and the elements of probable cause. The defendants have provided no evidentiary support to contradict this. This genuine issue of disputed fact precludes granting defendants' motion for summary judgment on this issue, and therefore, defendant the City of Atlanta and defendant Morris Redding's motions for summary judgment on the question of liability for the arrest are DENIED.

4. *Whether the Plaintiff's Injuries Were the Fault of the Plaintiff.*

The defendants the City and the individual police officers have moved for summary judgment on the grounds that the plaintiff failed to use available adequate procedures to protect his own rights. Defendants' Brief in Support of Motion for Summary Judgment, at 16. The City argues that all that was required by *Gerstein* was that the

City bring the plaintiff before a magistrate, and that once there the plaintiff could, in essence, fend for himself. Specifically, the City argues that plaintiff Lambert could have requested that the proceeding go forward for a hearing on whether there was probable cause to continue the prosecution at the time he was first brought before Judge Mickle. In addition, the City points out that the plaintiff did not request a preliminary hearing at any time prior to October 27. Laying aside the fact that it would have been pointless for the plaintiff to request the hearing to go on in view of Judge Mickle's statement that he could not hear the facts that day since the arresting officer was not present, the court finds the City's interpretation of *Gerstein* erroneous. *Gerstein* requires not merely that the defendant be "brought before" a magistrate. Rather, *Gerstein* requires that a judicial *determination* of probable cause must be made before any significant restraint of liberty occurs.[6] Furthermore, in view of the court's disposition of the confinement issue, there clearly is no way that plaintiff could have obtained his own release from the unconstitutional detention at the Atlanta City Jail. That prerogative lay solely with the jail-keepers. Defendants' argument is without merit, and the motion for summary judgment on this issue is DENIED.[7]

6. The City further argues that all that is required by Georgia law is that the defendant be "taken before" a magistrate. As plaintiff aptly points out, the Georgia cases cited by the City for this proposition relate to cases in which the arrest was pursuant to a warrant. In *Dean v. State,* the Georgia Supreme Court held that in the case of a warrantless arrest, a probable cause determination must be made within 48 hours. 250 Ga. 77, 295 S.E.2d 306 (1982) (requiring that the police obtain an arrest warrant within 48 hours of a valid warrantless arrest). Moreover, even had the City complied with Georgia law, that would not preclude a federal constitutional violation. *Bernard v. City of Palo Alto,* 699 F.2d 1023 (9th Cir.1983).

7. The cases relied upon by the defendants in support of this argument are simply inapposite. In *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Supreme Court held that an inmate negligently deprived of property

had not been deprived of that property "without due process of law" unless the state provided no adequate remedy for his loss. The case turned not on whether the plaintiff had "helped himself," but whether *the state* provided procedures which would redress the injury without necessitating a § 1983 action. Similarly, *Whitley v. Seibel,* 613 F.2d 682 (7th Cir.1980), involved a case in which the section 1983 plaintiff did not speak up at his preliminary hearing to argue that he had an alibi for the alleged offense. The court held that "if the plaintiff's tactics at his preliminary hearing were not to reveal his alibi defense, he assumed some risk that a finding of probable cause would result in his continued confinement. The plaintiff now seeks to place the blame for his confinement entirely on the defendant in his civil rights case." *Id.* at 687. In the present case, nothing plaintiff could have said at the preliminary hearing would have changed the determination of probable cause,

### 5. Whether Plaintiff's Right to a Speedy Trial Was Violated.

■ The defendants the City and the individual police officers have moved for summary judgment that the plaintiff was not denied his right to a speedy trial. The Supreme Court in *Barker v. Wingo*, held that whether a defendant's right to a speedy trial had been violated depended on a balancing of the conduct of the prosecution and that of the defendant, including consideration of: (1) the length of delay; (2) the reason for the delay; (3) defendant's assertion of the right; and (4) whether the defendant was prejudiced by the delay. 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1971). Applying these factors to the present case, the defendants argue that they are entitled to summary judgment that the plaintiff's right to a speedy trial was not violated. The plaintiff's only response to defendants' motion is that he was denied a speedy trial because of the delay in the preliminary hearing and the delay in the lab report. Plaintiff's Response at p. 33.

■ The court concurs with the defendants' argument on whether the plaintiff was deprived of the right to a speedy trial. The length of delay in this case was only six weeks, and the reason for the delay was a crime lab analysis which eventually produced exculpatory evidence. The plaintiff did not assert his right to a speedy trial, and clearly he was not prejudiced when the "trial" finally occurred, since the net effect of the delay was to produce evidence which resulted in dismissal of the charges against him. Therefore, the motion of the defendants for summary judgment on the question of whether the plaintiff's speedy trial rights were violated is GRANTED.

### 6. Whether Plaintiff Suffered a Constitutional Deprivation in the Amount of Bail.

■ The defendants have moved for summary judgment that the bail set in this case, $1200 for four offenses which included possession of a Schedule I substance, was a reasonable bail, citing *United States v. Bass*, 573 F.2d 258 (5th Cir.1975), for the proposition that the United States Constitution does not grant an absolute right to bail which a defendant can afford, but requires only that any bail which is set be reasonable. The plaintiff has responded by arguing that there is an eighth amendment violation because once the negative crime lab report came back on the three drug offenses, they should have been dismissed, thereby reducing the total amount of his bail.

As a preliminary matter, the court would note that the United States Supreme Court has never squarely held that the excessive bail provision of the eighth amendment to the United States Constitution is applicable to the states. However, in *Schilb v. Kuebel*, 404 U.S. 357, 365, 92 S.Ct. 479, 484, 30 L.Ed.2d 502 (1971), the Court stated that "the eighth amendment's proscription of excessive bail has been assumed to have application to the states through the fourteenth amendment." *See also Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3, 61 L.Ed.2d 433 (1979). The Eighth Circuit Court of Appeals, in *Hunt v. Roth*, 648 F.2d 1148 (8th Cir.1981), has held that the right not to have excessive bail imposed is incorporated by the fourteenth amendment. *Id.* at 1155. The Fifth Circuit has held, in *Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir.1978) (en banc) (without addressing the incorporation issue), that bail "set at a figure higher than amount reasonably calculated to [secure the appearance of the defendant] ... is excessive under the eighth amendment." *Id.* at 1057.

The plaintiff's argument here that, had the drug charges been dismissed when they should have been, the bail would correspondingly have been reduced is persuasive. The argument however, at the present time does not present a concrete controversy, since plaintiff has made no showing that if the bond were only $300 on the criminal damage to property charge he

since none was made. *Whitley* is plainly inapposite.

could have made bond. Thus, even had the charges been dismissed promptly, the court cannot say that any bail then set would have been excessive, since there is no way of knowing what or whether bail would have been set.[8] The court therefore concludes that the issue presented by the defendant is not whether the bail was excessive, but whether the plaintiff was injured even if it was excessive. This the court cannot say on the state of this record. Moreover, no evidence in this record establishes that, even if the bond was excessive, any of these defendants had any responsibility for setting the bond. Thus, not on the grounds that there is a "disputed" question of fact, but on the grounds that there is no evidence at all on this point, the defendants' motion for summary judgment is DENIED.

7. *Whether Defendants are Liable for the Conditions in the Atlanta City Jail, Given Parratt v. Taylor.*

■ The defendants have argued that even if plaintiff's complaint regarding the physical conditions in the Atlanta City Jail demonstrated deprivation of plaintiff's fourteenth amendment right not to be deprived of life, liberty, or property without due process, *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), holds that where there are adequate state remedies for the alleged deprivation, the deprivation is not "without due process." The Eleventh Circuit, in *Gilmere v. City of Atlanta*, 737 F.2d 894, held that the *Parratt* rationale applies in cases alleging deprivation of liberty without due process. *Id.* at 905. The defendants argue that *Gilmere* therefore requires this court to determine whether there are adequate state remedies "... in negligence against employees, officers, and the City of Atlanta for negligent treatment of him, as well as for medical malpractice." Defendants' Brief in Support of Motion for Summary Judgment at 23.

The plaintiff has responded to this argument by arguing first that *Gilmere* was wrong. Plaintiff's Response at p. 10, footnote 4. *Gilmere* is binding precedent for this circuit, and the court therefore concludes that the *Parratt* rationale would apply to a deprivation of liberty without due process. Plaintiff's response then spends several pages arguing that *Parratt* only applies to due process claims. Of course, with respect to the jail conditions, the plaintiff is asserting a violation of due process. See Plaintiff's Response to Defendants' Motion for Summary Judgment, at 31. On the merits of the *Parratt* argument, the plaintiff argues only that he has no adequate state law remedy against the City of Atlanta because the Official Code of Georgia, § 36–33–3, provides that "a municipal corporation shall not be liable for the torts of policemen or other officers engaged in the discharge of the duties imposed on them by law."

The court concludes that the City is not entitled to summary judgment on the question of whether *Parratt* precludes plaintiff's claim. Georgia law imposes liability for negligence both on officers and public employees, and on municipal corporations when the acts in question are in the nature of a "ministerial duty." *Keener v. Kimble*, 170 Ga.App. 674, 317 S.E.2d 900 (1984); *McCrary Engineering Corp. v. City of Bowdon*, 170 Ga.App. 462, 317 S.E.2d 308 (1984); O.C.G.A. § 36–33–1. However, the maintenance of a jail by a municipality is considered a "governmental function" and the municipality is immune from liability therefor. *Archer v. City of Austell*, 68 Ga.App. 493, 23 S.E.2d 512 (1942).

The United States Supreme Court recognized this term in *Hudson v. Palmer*, —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), that consideration of state doctrines of immunity is relevant in determining the "adequacy" of state remedies. Where, as in the present case, the municipal corpora-

---

**8.** Since the ultimate disposition of the criminal damage to property charge was that the plaintiff was sentenced to ten days, which was covered by the time he had already served, bail would obviously have been unnecessary even on October 2, the date of the crime lab report, since at that stage the plaintiff had already served at least ten days.

tion of the City of Atlanta is immune from suit in performing the governmental function of maintaining the jail, the court cannot conclude as a matter of law that adequate state remedies exist. Therefore, defendants' motion for summary judgment on the *Parratt* question is DENIED.

8. *Whether Any or All of the Defendants are Liable for the Conditions Present in the Atlanta City Jail.*

The City has moved for summary judgment that it is not liable for the conditions in the Atlanta City Jail on the grounds that there is no policy by the City of Atlanta which would lead to unconstitutional jail conditions. The City of Atlanta has submitted, at Exhibit H to its motion for summary judgment on this question, certified copies of the Atlanta City Ordinance which requires the Bureau of Corrections frequently to inspect the jail and to assure that there are adequate sanitary conditions, and that food, clothing and health care are provided. In addition, at Exhibit I, the City has provided evidence that the Bureau of Corrections provides a health services unit which responds to inmates' health needs. The plaintiff, in response, has argued that constitutional violations were so rampant at the city jail[9] that they constituted a "custom" by the City which deprived the plaintiff of constitutional rights.

■ The court concludes that there is a factual question present with respect to whether the conditions at the Atlanta City Jail were the result of a city custom. The defendants have offered ordinances which require certain standards be maintained, but the plaintiff has countered by offering evidence of widespread violations of constitutional rights at the city jail. In other words, the plaintiff has made a sufficient showing to survive a motion for summary judgment that the conditions in the Atlanta City Jail were the result of a city custom. In *Gilmere v. City of Atlanta*, 737 F.2d 902, n. 22, the Eleventh Circuit Court of Appeals noted that "custom may result when . . . lawmakers or officials *maintain,* by implicit ratification, a policy begun by persons whose edicts or acts could not be said to represent official policy" (emphasis added). In the present case, if as plaintiff alleges, the Bureau of Corrections persistently maintained conditions in the Atlanta City Jail which did not conform to the ordinance but which did amount to a custom of (as opposed to random) deprivation of rights, then the City may be liable. On this basis, defendants' motion for summary judgment is DENIED.

■ Defendants' motion for summary judgment on the question of jail conditions is DENIED for a separate reason. According to *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), in order to determine whether pretrial detention conditions violate the Constitution, it is necessary as a preliminary matter to determine if the intent of the conditions is to punish. If the intent is to punish, then the Constitution prohibits the conditions. If there is no intent to punish, and the practice is reasonably related to a non-punishment objective, then there is no constitutional violation.[10] The Fifth Circuit Court of Appeals, in *Jones v. Diamond,* 636 F.2d 1364 (5th Cir.1981) (en banc), emphasized that the central question in a case brought by pretrial detainees challenging the constitutionality of conditions of confinement is factual: to wit, whether the intention of the conditions is to punish, and if not, whether restrictions or conditions are reasonably related to legitimate aims. *Id.* at 1368. In light of the factual determinations necessary on the conditions of confinement issue, the court concludes that the

---

**9.** The defendants have not controverted that Lambert was given no drinking water while in the jail, that the jail was unheated, or that Lambert became sick as a result of the conditions in the city jail.

**10.** The City's reliance on *Gilmere v. City of Atlanta,* 737 F.2d 894 (11th Cir.1984), is mis-

placed. While *Gilmere* did, as argued by the City, hold that there can be no eighth amendment cruel and unusual punishment without a criminal conviction, *Bell v. Wolfish* requires a fourteenth amendment due process analysis of *pretrial* conditions. 441 U.S. at 535, 99 S.Ct. at 1872.

City is not entitled to summary judgment on this issue.

9. *Whether the Plaintiff has Standing to Seek Injunctive Relief.*

 Finally, the City has moved for summary judgment on the question of whether the plaintiff has standing to seek injunctive relief as claimed in the complaint. Plaintiff's complaint, at paragraph three of the prayer for damages, requests injunctive and declaratory relief directed to the City of Atlanta and Police Chief Redding respecting crime lab analyses; prompt judicial determinations of probable cause; training requirements; and a cease and desist order with respect to alleged unconstitutional practices. The City has argued, based on the recent Supreme Court decision of *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), that the plaintiff has no standing to seek injunctive relief in this civil rights action.

In *Lyons,* the plaintiff brought a section 1983 action against the City seeking an injunction against the use of the so-called "chokehold" in situations where the police were not threatened by use of deadly force. The district court issued the injunction, and was affirmed by the court of appeals. The United States Supreme Court reversed, holding that to satisfy the case or controversy requirement of Article III, "a plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as a result of the challenged official conduct." Citing the case of *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), the Supreme Court in *Lyons* re-emphasized that "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." In *Lyons,* the lower court found as a matter of fact that the police department in the City of Los Angeles authorized the use of the chokehold by insufficiently trained officers in situations where no one is threatened by death or bodily harm. Even given this finding, the Supreme Court

held that the plaintiff did not have standing to satisfy the case or controversy requirement of Article III of the United States Constitution. Again citing *O'Shea,* the court held that "... the prospect of future injury rest[s] on the likelihood that plaintiffs will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing before [the civil rights defendants]." In *O'Shea,* the Supreme Court did not find an active case or controversy, because it assumed that the plaintiffs would conduct their activities within the law, and so avoid prosecution and conviction as well as exposure to the challenged course of conduct. 414 U.S. at 497, 94 S.Ct. at 676.

The rationale of *Lyons* appears to the court to be controlling. The plaintiff has attempted to distinguish *Lyons* on the grounds that "because Lyons failed to [allege that city policy authorized police officers to use chokeholds in every instance of an arrest or search and seizure] ..., the [Supreme] court held that the likelihood that he would again be subjected to the unconstitutional treatment was too speculative to warrant injunctive relief." Plaintiff's Response on Motions for Summary Judgment, at 32. The plaintiff has misstated the holding of *Lyons.* The Supreme Court held as follows with respect to the passage to which plaintiff refers:

> In order to establish an actual controversy in this case, Lyons would have had *not only to allege that he would have another encounter with the police* but also to make the incredible assertion either, (1) that all police officers in Los Angeles always choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered or authorized police officers to act in such manner.

103 S.Ct. at 1667 (emphasis added). Plaintiff has apparently misread the Supreme Court's holding, for plaintiff argues that *Lyons* is inapposite since the Supreme Court would have found that Lyons had

standing if he alleged that the City authorized chokeholds in every case, and that plaintiff Lambert is alleging that constitutional violations are the result of City policy in every case of warrantless arrests. As should be apparent from the foregoing language, however, the court's dictum in *Lyons* with respect to the City authorizing chokeholds in every arrest was *in addition to* the threshold necessity of Lyons having to allege that he would have another encounter with the police. Since the Supreme Court has refused, in *O'Shea,* as explained *supra,* to assume that an individual will break the law and thereby encounter the police again, the plaintiff in the present case has no standing to seek injunctive relief. Therefore, the defendants' motion for summary judgment on this question is GRANTED.

## IV. CONCLUSION.

In summary, plaintiff's motion for leave to exceed the page limits is GRANTED. Plaintiff's motion for summary judgment on the question of the City's liability for his confinement is DENIED with leave to renew. The parties shall have thirty (30) days from entry of this order to conduct discovery on the question of responsibility for plaintiff's detention. The City's motion for summary judgment on the question of liability for plaintiff's confinement is DENIED. The motion of defendants Redding, Powell, Johnson, and McFarland for summary judgment on the question of liability for plaintiff's confinement is DENIED. The motions by defendants the City of Atlanta and Morris Redding for summary judgment on the question of liability for plaintiff's arrest are DENIED. The motion by the City for summary judgment on the grounds that any wrongs suffered by plaintiff were plaintiff's fault is DENIED. Defendants' motion for summary judgment on the question of whether plaintiff was denied a speedy trial is GRANTED. Defendants' motion for summary judgment respecting whether there was a constitutional deprivation in the amount of bail is DENIED. Both of the defendants' motions respecting jail conditions, that relat-

ing to *Parratt* and that relating to *Monell,* are DENIED. Finally, the defendants' motion for summary judgment on the question of whether plaintiff has standing to seek an injunction is GRANTED.

## ON RENEWED MOTION FOR SUMMARY JUDGMENT

This action is before the court on plaintiff's unopposed renewed motion for summary judgment, filed November 30, 1984. This court, by order entered October 17, 1984, permitted the parties to conduct additional discovery in order to determine where responsibility for detention in the Atlanta City Jail lies. The court's October 17, 1984 order determined that the plaintiff in this case had been deprived of a liberty interest without due process of law, by virtue of his confinement in the Atlanta City Jail after a warrantless arrest, where he did not receive a judicial determination of probable cause promptly after the arrest. Additional discovery by the plaintiff has revealed that responsibility for confinement at the Atlanta City Jail lies with the Atlanta Bureau of Correctional Services, a division of the Atlanta Department of Public Safety, part of the executive branch of the City of Atlanta. In accordance with the October 17, 1984 order, it therefore appears that the City of Atlanta is the responsible custodian of those confined in the Atlanta City Jail, and that therefore summary judgment in plaintiff's favor on the claim of a violation of *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), is appropriate. Plaintiff's renewed motion, to which no response has been filed, seeks to impose liability only on the City of Atlanta for this confinement, and therefore as to plaintiff's claim of a *Gerstein* violation, summary judgment is entered in favor of the plaintiff and against the defendant the City of Atlanta. *See also Trezevant v. City of Tampa,* 741 F.2d 336 (11th Cir.1984).

The October 17, 1984 order additionally addressed plaintiff's claims of unconstitutional confinement following negative laboratory results on the suspected

drug substances involved in this case. On October 2, 1982, Officer R.T. McFarland received the negative drug report from the state crime lab, but in accordance with city policy did not inform anyone of the negative crime lab analysis until October 27, 1982, which was plaintiff's next scheduled court date. Had the court or the city solicitor been notified that the crime lab analysis was negative, the drug-related charges against the plaintiff would have been dismissed. However, the plaintiff was also being held on a criminal damage to property charge, and as the court noted in the October 17, 1984 order, there was no evidence that plaintiff could have made bond on that charge on October 2, 1982. In plaintiff's renewed motion, plaintiff has provided the court with evidence that although the plaintiff could not make the $1200 bond which had been imposed for all four of the charges against him, he did have the capacity to post the $300 bond on the property charge as of October 2, 1982. Therefore, the undisputed facts of this case reveal that had the drug-related charges been dismissed on October 2, 1982, the plaintiff could have obtained his release. The sole question remaining, then, is which defendants are liable for the detention of plaintiff after the point in time when the drug-related charges should have been dismissed.

As the court noted in its prior order in this case, "it is undisputedly the policy and practice of the City of Atlanta, by and through its Bureau of Police Services and individual officers executing that policy, not to inform anyone in a position to release a defendant charged with drug-related violations that the substances in fact are not drugs." October 17, 1984 Order at 21. Under such a circumstance, section 1983 liability is appropriate. *Bryan v. Jones,* 530 F.2d 1210 (5th Cir.1976) (en banc), *cert. denied,* 429 U.S. 865, 97 S.Ct. 174, 50 L.Ed.2d 145 (1976). The plaintiff's renewed motion seeks to impose liability for this portion of his confinement on the City of Atlanta, Morris Redding in his official capacity as head of the Atlanta Bureau of Police Services, and defendant R.T. McFar-

land, individually and in his official capacity. With respect to the municipal liability of the City, and the official liability of Morris Redding and R.T. McFarland, the court concludes that plaintiff is entitled to summary judgment. The undisputed facts of this case reveal that it is the policy and practice of the City, by and through its Bureau of Police Services of which Morris Redding is the head, and of which McFarland is an agent, not to reveal negative drug analysis reports until the defendant's next scheduled court date. *See Trezevant v. City of Tampa, supra.*

With respect to Officer McFarland individually, the undisputed facts of the case reveal that he received the negative crime lab report, and that he did not report it to anyone until the plaintiff's next regularly scheduled court date. Had he informed the solicitor's office of the negative report, the undisputed facts show that plaintiff would have been released from confinement, and the drug-related charges dismissed. To that extent, McFarland had control over plaintiff's confinement once the negative lab reports were given to him. McFarland has not argued that he is entitled to the good faith immunity defense, since his inaction was the product of the City's policy. *Cf. Vela v. White,* 703 F.2d 147, 152 (5th Cir.1983). McFarland has also not opposed plaintiff's motion for summary judgment that he is liable in his individual capacity, and the motion could be granted on that ground alone. *Simon v. Kroger,* 743 F.2d 1544 (11th Cir.1984). In view of the direct link between McFarland's inaction and plaintiff's continued detention, and given McFarland's non-opposition to the motion, plaintiff's motion for summary judgment is GRANTED as to McFarland in his individual capacity.

In summary, plaintiff's unopposed renewed motion for summary judgment as to the *Gerstein* violation is GRANTED. Plaintiff is entitled to summary judgment as to the City of Atlanta that the City is liable for plaintiff's detention without a prompt probable cause determination. With respect to the period of confinement

following the negative crime lab analysis, the court concludes that plaintiff's motion for summary judgment as to defendants the City of Atlanta, Morris Redding in his official capacity, and R.T. McFarland in his official capacity, is GRANTED. Plaintiff's motion for summary judgment as to defendant McFarland in his individual capacity is also GRANTED.