73 P.3d 29

**In the Interest of John DOE, Born on January 25, 1985, Petitioner–Appellant.**

**In the Interest of John DOE, Born on January 28, 1983, Petitioner Appellant.**

Nos. 24042, 24036.

Supreme Court of Hawai'i.

July 11, 2003.

As Corrected July 11, 2003.

Jon N. Ikenaga, Deputy Public Defender, on the briefs, for the petitioners-appellants John Doe, Born on January 25, 1985, and John Doe, Born on January 28, 1983.

Mangmang Qiu Brown, Deputy Prosecuting Attorney, on the briefs, for the respondent-appellee, State of Hawai'i.

MOON, C.J., LEVINSON and NAKAYAMA, JJ., and Circuit Judge KOCHI, assigned by reason of vacancy, with ACOBA, J., dissenting.

Opinion of the Court by LEVINSON, J.

The petitioners-appellants John Doe, born January 25, 1985 [hereinafter, "Minor 1"], in No. 24036, and John Doe, born on January 28, 1983 [hereinafter, "Minor 2"], in No. 24042 [hereinafter, collectively, "the Minors"], appeal from the orders of the Family Court of the First Circuit, the Honorable Frances Q.F. Wong presiding, denying their petitions for writs of habeas corpus, filed on January 12, 2001, in which they challenged their detention by the family court. The Minors argue that the family court erred in denying their petitions because, during their initial detention hearings in the family court, the Honorable William J. Nagle, III, presiding, "there was no factual basis for a probable cause determination to justify continued detention[;]" accordingly, the Minors pray that this court "find that the family court erred in denying their petitions for writs of

habeas corpus based on the failure of the court at the initial hearing to make a determination of probable cause for continued detention beyond twenty-four hours." [1]

For the reasons discussed *infra* in section II, we hold that the Minors' consolidated appeals are moot.

## I. *BACKGROUND*

On December 6, 2000, the prosecution filed petitions alleging that the Minors came within the purview of HRS § 571–11(1) (1993),[2] on the basis that they allegedly committed or attempted to commit the offense of assault in the third degree, in violation of HRS § 707–712(1)(a) (1993). The same day, the Minors entered denials of the prosecution's charges and the family court, the Honorable William J. Nagle, III, presiding, found that there were sufficient facts to require continued detention of the Minors until their trials on December 12, 2000.

The next day, December 7, 2000, both minors filed petitions for a writ of habeas corpus, pursuant, *inter alia*, to HRS § 660–3 (1993),[3] in which they argued that they were being held illegally because the family court had not been presented with any evidence upon which it could base its finding that probable cause existed to detain them. In the affidavit that the Minors' counsel filed with each of their petitions, counsel attested that, although Judge Nagle had found that "probable cause existed to detain the [M]inor[s] until trial[,]" "no evidence of any kind was presented to Judge Nagle to support the finding of probable cause[.]"

The family court conducted a consolidated hearing on the petitions on December 11, 2000. The prosecution argued that, because Minor 1 had not objected "when Judge Nagle

1. The Minors, however, seek to disturb neither the family court's adjudication of Minor 1 as a law violator within the purview of HRS § 571–11(1) in No. 24036 nor the family court's dismissal with prejudice of the petition regarding Minor 2 in No. 24042.

2. HRS § 571–11 provides in relevant part:

Except as otherwise provided in this chapter, the [family] court shall have exclusive original jurisdiction in proceedings:

(1) [c]oncerning any person who is alleged to have committed an act prior to achieving eighteen years of age which would constitute a violation or attempted violation of any federal, state, or local law or municipal ordinance....

3. HRS § 660–3 provides in relevant part that the family court "may issue writs of habeas corpus in cases in which persons are unlawfully restrained of their liberty ... by order of the family court or under chapter 334...."

did find probable cause ... to hold the minor," he had waived his right to challenge the family court's determination of probable cause or had impliedly "agreed that there was probable cause to hold him at that point." In addition, the prosecution suggested that the family court could "cure" any alleged error in Judge Nagle's determination by reviewing the police reports regarding the Minors and making a new determination of probable cause. Counsel for the Minors contended that, pursuant to *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the family court was required to base its determination on facts and circumstances submitted to the court, not just a complaint, regardless of whether the minor requested it or not, and that the error could not be cured.

The family court subsequently reviewed the police reports regarding each minor's case and found that probable cause existed to believe that the Minors fell within the purview of HRS § 571–11, *see supra* note 1.[4] Accordingly, the circuit court orally ruled as follows:

> Insofar as the writ of habeas corpus points to ... lack of legal foundation for the probable cause decisions which were made at the time of detention, that's cured. And I do not find that—that an appropriate remedy would be therefore to release the kids.
>
> Insofar as the writ challenges family court's ... basic authority to deal with these kids, I had already ruled on that; that regardless of the new charges and any defects that—that might have occurred with the two charges, that notwithstanding that[,] that given the [probation] status of each kid, each of these two juveniles, that the Court did have independent authority in any case to hold them.

4. Thus, the family court essentially treated the Minors' habeas petitions as motions for reconsideration of its initial probable cause determination, required as a prerequisite to appealing an order of the family court pursuant to HRS § 571–54 (1993), as construed by the Intermediate Court of Appeals in *In re Doe*, 3 Haw.App. 391, 394, 651 P.2d 492, 494 (1982).

5. HRPP Rule 5 provides in relevant part:
 As soon as practicable, and, Rule 45 notwithstanding, not later than 48 hours after the

In addition, the family court ruled that Hawai'i Rules of Penal Procedure (HRPP) Rule 5 (2001),[5] which the Minors urged the family court to consider, was inapplicable to family court proceedings. Consequently, the family court denied the Minors' petitions.

On December 12, 2000, the family court filed a decree regarding the prosecution's petition concerning Minor 1's law violation, in which it found that "the material allegations of [Minor 1's] petition have been proved beyond a reasonable doubt and that [Minor 1] is a law violator within the purview of HRS [§ ] 571–11(1)." The family court's decree noted, however, that the charge against Minor 1 had been "[a]mended to [a]ffray," pursuant to HRS § 707–712(2). The family court transferred further disposition of Minor 1's case to the third circuit court. As for Minor 2, the family court dismissed the prosecution's petition with prejudice.

On January 12, 2001, the family court entered its written orders denying the Minors' petitions for writs of habeas corpus; on January 17, 2001, the Minors filed notices of appeal from the family court's January 12, 2001 written orders. The Minors' appeals were subsequently consolidated.

## II. *DISCUSSION*

It is well settled in Hawai'i that

[a] case is moot where the question to be determined is abstract and does not rest on existing facts or rights. Thus, the mootness doctrine is properly invoked where "events ... have so affected the relations between the parties that the two conditions for justiciability relevant on appeal—adverse interest and effective remedy—have been compromised."

> warrantless arrest of a person held in custody, a district judge shall determine whether there was probable cause for the arrest. No judicial determination of probable cause shall be made unless there is before the judge, at the minimum, an affidavit of the arresting officer or other person making the arrest, setting forth the specific facts to find probable cause to believe that an offense has been committed and that the arrested person has committed it.

*Okada Trucking Co., Ltd. v. Board of Water Supply*, 99 Hawai'i 191, 195–96, 53 P.3d 799, 803–04 (2002) (quoting *CARL Corp. v. State, Dep't of Educ.*, 93 Hawai'i 155, 164, 997 P.2d 567, 576 (2000) (quoting *In re Application of Thomas*, 73 Haw. 223, 226, 832 P.2d 253, 254 (1992) (quoting *Wong v. Board of Regents, University of Hawai'i*, 62 Haw. 391, 394, 616 P.2d 201, 203–04 (1980)))). The Minors urge this court to hold that the family court erred in denying their habeas petitions, but we are unable to discern any adverse interest or effective remedy in the present matter at this time, inasmuch as the family court has adjudged Minor 1 to be a law violator within the purview of HRS § 571–11(1) and has dismissed the petition regarding Minor 2 with prejudice. Although the Hawai'i appellate courts have never specifically addressed the question, it is widely acknowledged in other jurisdictions that, absent unusual circumstances, any defects in a pretrial determination of probable cause are rendered moot, or are without any effective remedy, which is much the same thing,[6] by a subsequent conviction, *see Blue v. United States*, 342 F.2d 894, 901 (D.C.Cir.1965) (rejecting a juvenile's challenge to pretrial detention in light of the subsequent trial in which he was adjudged guilty of the charges); *People v. Alexander*, 663 P.2d 1024, 1025 n. 2 (Colo. 1983) ("Absent unusual circumstances . . . [,] any issue as to the presence of probable cause is rendered moot by the jury's guilty

verdict."); *State v. Mitchell*, 104 Idaho 493, 660 P.2d 1336, 1343 (1983) (holding that a magistrate's reliance upon inadmissible evidence to establish probable cause "is not a ground for vacating a conviction where the appellant received a fair trial and was convicted, and there is sufficient evidence to sustain the conviction"); *State v. West*, 223 Neb. 241, 388 N.W.2d 823, 829 (1986) (noting that "any error . . . in ruling on a plea in abatement is cured by a subsequent finding by the jury of guilt beyond a reasonable doubt"); *Commonwealth v. McCullough*, 501 Pa. 423, 461 A.2d 1229, 1231 (1983) (holding that an error in appellant's preliminary hearing is "immaterial where at the trial the Commonwealth met its burden of proving the underlying felony beyond a reasonable doubt"), or a dismissal of the charges, *see Bell v. Dillard Dept. Stores, Inc.*, 85 F.3d 1451, 1456 (10th Cir.1996) (noting that, "[a]fter the dismissal of the charges at trial, an appeal of the probable cause determination would be subject to dismissal as moot"); *see also Spriggs v. Wilson*, 467 F.2d 382, 384–85 (D.C.Cir.1972) (holding that an appeal challenging pretrial police line-up procedures was moot because the "appellant was acquitted of all charges that were not dismissed by the Government"). We agree.[7]

 The Minors do not deny that their cases are moot,[8] nor do they contend that the

---

6. Justice Acoba seems to believe that the lack of an effective remedy weighs against rather than in favor of a finding of mootness. *See* Dissenting Opinion at 81, 73 P.3d at 35 ("the cases cited by the majority[,]" in support of the proposition that defects in a pretrial determination of probable cause are rendered moot by a subsequent conviction or dismissal, "support an *opposing conclusion*, namely, that courts maintain jurisdiction, but the *remedy* for a defective probable cause hearing may not require the reversal of a valid conviction or release" (some emphasis added and some in original)). But Justice Acoba fails to cite any authority in support of his belief and, as noted *supra*, it is well settled in Hawai'i that the absence of "adverse interest and effective remedy" renders an appeal moot. *See Okada Trucking Co., Ltd.*, 99 Hawai'i at 195–96, 53 P.3d at 803–04 (citations omitted).

7. We are unable to discern why, as Justice Acoba suggests in his dissent, *see* Dissenting Opinion at 88–89, 73 P.3d at 42–43, the foregoing holding would preclude claims for relief brought pursu-

ant to 42 U.S.C. § 1983 or the suppression of evidence obtained as the result of an unlawful detention. Indeed, *Bell*, 85 F.3d at 1456, cited *supra*, expressly notes that civil rights claims are not precluded simply because the plaintiff's "acquittal in the prior criminal case deprive[s] [him or her] of the opportunity to appeal" the probable cause issue. (Discussing *Dixon v. Richer*, 922 F.2d 1456, 1459 (10th Cir.1991).) Nevertheless, we believe that it is prudent to leave such questions for an appeal in which the parties raise them. The parties in the present matter neither advance civil rights claims nor seek to overturn Minor 1's adjudication as a law violator on the basis that the family court erroneously admitted evidence obtained from an unlawful detention. Rather, the Minors' appeals arise from the prosecution's charges of criminal misconduct. *See supra* note 4.

8. Nor do they seek any remedy other than this court's pronouncement that the family court erred.

family court's alleged error prejudiced them in any way;[9] instead, they claim that this court should review their cases on the basis that the matters presented are "of substantial public concern and capable of repetition, yet evading review," and, consequently, represent an exception to the mootness doctrine. We disagree.

■ This court has "recognized an exception to the mootness doctrine in cases involving questions that affect the public interest and are capable of repetition yet evading review." *Okada Trucking Co.*, 99 Hawai'i at 196, 53 P.3d at 804 (citations and internal quotation signals omitted). "Among the criteria considered in determining the existence of the requisite degree of public interest are the public or private nature of the question presented, the desirability of an authoritative

determination for the future guidance of public officers, and the likelihood of future recurrence of the question." *Id.* at 196–97, 53 P.3d at 804–05 (quoting *Johnston v. Ing*, 50 Haw. 379, 381, 441 P.2d 138, 140 (quoting *In re Brooks' Estate*, 32 Ill.2d 361, 205 N.E.2d 435, 437–438 (1965))) (internal quotation signals omitted).

The Minors argue that the issues raised in their appeal are of substantial public concern on the basis that they "involve the due process rights of minors pertaining to detainment and detention."[10] But the Minors do not challenge the preliminary detention procedures prescribed by HRS § 571–32(e) (1993);[11] they merely contend that there were insufficient facts and circumstances to support Judge Nagle's determinations of probable cause in their particular cases.[12]

9. Indeed, we are unable to discern how the alleged delay in a proper finding of probable cause might have prejudiced the Minors, inasmuch as Minor 1 was adjudicated a law violator and the family court dismissed the petition concerning Minor 2 with prejudice on December 12, 2000, the day on which Judge Nagle originally scheduled their trials. We note in this regard that even "constitutional error[s may be] harmless so long as 'the court ... [is] able to declare a belief that it was harmless beyond a reasonable doubt.'" *Korean Buddhist Dae Won Sa Temple v. Sullivan*, 87 Hawai'i 217, 245, 953 P.2d 1315, 1343 (1998) (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)) (some brackets added and some in original) (ellipses in original). "Recognizing as much, this court applies the harmless error doctrine to errors that occur in the trial process, including those that implicate an accused's constitutional rights." *State v. Aplaca*, 96 Hawai'i 17, 25, 25 P.3d 792, 800 (2001) (citing *State v. Ford*, 84 Hawai'i 65, 74, 929 P.2d 78, 87 (1996)).

10. Although the Minors contend that the present matter involves the "due process" rights of minors, they, in fact, premised their constitutional challenges upon the fourth amendment to the United States Constitution and Article I, section 7 of the Hawai'i Constitution, which protect citizens against, *inter alia*, unreasonable searches and seizures.

11. HRS § 571–32(e) provides in relevant part:

No child may be held after the filing of a petition or motion ... unless an order for continued detention or shelter has been made by a judge after a court hearing. If there is probable cause to believe that the child comes within section 571–11(1)[, *see infra* note 1], the

child may be securely detained, following a court hearing, in a detention facility for juveniles or may be held in a shelter....

Inasmuch as the Minors do not challenge the constitutionality of HRS § 571–32(e), Justice Acoba's speculation regarding the statute's constitutionality, *see* Dissenting Opinion at 87–88, 73 P.3d at 41–42, while interesting, is inapposite in the present matter.

12. Although the Minors pray in the conclusion of their opening brief that this court "find that the family court erred in denying their petitions for writs of habeas corpus based on the failure of the court at the initial hearing to make a determination of probable cause for continued detention beyond twenty-four hours[,]" their point of error on appeal is, in fact, that "there was no factual basis for a probable cause determination to justify continued detention" and *not* that Judge Nagle failed to make any probable cause determination at all. Indeed, as noted *supra* in section I, in the affidavits that the Minors filed with their habeas petitions, their counsel admitted that Judge Nagle did "find that probable cause existed to detain the [M]inor[s] until trial" and merely alleged that "no evidence of any kind was presented to Judge Nagle to support the finding of probable cause."

Thus, Justice Acoba's entire constitutional analysis, *See* Dissenting Opinion at 77–88, 73 P.3d at 31–42, which relies upon case law involving detainees who were not, or claimed they were not, afforded a prompt judicial determination of probable cause, *see, e.g., County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991); *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Blumel v. Mylander*, 954 F.Supp. 1547, 1559 (M.D.Fla.1997); *Alfredo A. v. Superior Court of Los Angeles County*, 6 Cal.4th 1212, 26 Cal.

But assuming *arguendo* that Judge Nagle erred in making a probable cause determination in the absence of any evidence,[13] the same was subsequently cured by Judge Wong, who reviewed the police reports concerning the Minors and determined that there was probable cause to detain them. Notably, the Minors do not argue that Judge Wong lacked sufficient facts and circumstances upon which to base her probable cause determinations. Thus, assuming *arguendo* that Judge Nagle erred in the present matter, there is no need for "an authoritative determination for the future guidance of public officers," inasmuch as the family court is clearly aware of its responsibilities regarding determinations of probable cause.[14] *See CARL Corp.*, 93 Hawai'i at 165, 997 P.2d at 577 (noting that even matters that clearly involve public concern do not qualify for an exception to the mootness doctrine if "no

additional 'authoritative determination' is needed" (quoting *Life of the Land v. Burns*, 59 Haw. 244, 251, 580 P.2d 405, 409–10 (1978))). Indeed, "there [is] no unsettled legal question for this court to address[,]" *Okada Trucking Co.*, 99 Hawai'i at 197, 53 P.3d at 805, and the Minors' grievances are "private rather than public in nature." *Cf. id.* (holding that a hearings officer's interpretation of the Procurement Code qualified as an exception to the mootness doctrine on the basis that, *inter alia,* "a real question of law remains unsettled .... [and] every contractor that submits a bid for a public procurement contract in the future will be effected by the hearings officer's interpretation"). Put simply, there is no need for this court to address alleged errors that the family court has cured of its own accord in a controversy that is now moot.[15]

Rptr.2d 623, 865 P.2d 56 (1994); *Black v. State*, 871 P.2d 35 (Okla.Crim.App.1994), rather than detentions based on a defective determination of probable cause, is inapposite to the present matter.

**13.** Because there is no transcript in the record on appeal of the proceeding conducted before Judge Nagle on December 6, 2000, and Judge Nagle did not expressly recite the facts "sufficient ... to require continued detention," it is impossible for us to determine whether there is any merit to the Minors' contention that "no evidence of any kind was presented to [the family court] to support the finding of probable cause." We note that it is the appellant's responsibility to include a transcript of any proceedings relevant to his or her points of error on appeal. *See* Hawai'i Rules of Appellate Procedure (HRAP) Rule 10(b)(1)(A) ("When an appellant desires to raise any point on appeal that requires consideration of the oral proceedings before the court ... appealed from, the appellant shall file with the clerk of the court appealed from ... a request or requests to prepare a reporter's transcript of such parts of the proceedings as the appellant deems necessary...."); *Bettencourt v. Bettencourt*, 80 Hawai'i 225, 230–31, 909 P.2d 553, 558–59 (1995) (disregarding arguments raised on appeal that required a review of the proceedings below because the appellant failed to include a transcript of the proceedings in the record); *Tradewinds Hotel, Inc. v. Cochran,* 8 Haw.App. 256, 266, 799 P.2d 60, 66 (1990) (same). Justice Acoba infers from the deputy prosecuting attorney's (DPA) comments during the habeas corpus hearings that the Minors' allegation that no evidence was introduced at the December 6, 2000 probable cause hearings is correct, *see* Dissenting Opinion at 81–82, 85, 73 P.3d at 35–36, 39 ("not

once did the prosecution indicate that evidence establishing probable cause had been introduced at the December 6 hearing"). It is true that the DPA did not expressly dispute the Minors' evidentiary claim, but the DPA was "at somewhat of a disadvantage," as he explained to the court, "since [he] was[ not] ... present at the [December 6, 2000] hearing." Nevertheless, he informed the court that the DPA who had attended the December 6, 2000 hearing had advised him that the Minors had not objected to the probable cause determination, although the deputy public defender (DPD) had advised him that he had objected in Minor 2's case. Consequently, the DPA argued that Minor 1 must have "agreed that there was probable cause to hold him at that point" but that he did not know "who to believe" with respect to Minor 2. Faced with this uncertainty, he suggested that the family court simply review the police reports and make a probable cause determination in order to "cure" any defect. We believe that it is unwise for this court to presume to know what took place during the December 6, 2000 probable cause hearing based on the foregoing comments by the DPA, in light of the fact that he did not participate in the December 6, 2000 hearing and he himself did not claim to know whether any evidence was introduced at the hearing.

**14.** The Minors would have a more compelling case if the family court had not ensured that any alleged error was cured.

**15.** The Minors also contend that Judge Wong erred in concluding that, irrespective of the determinations of probable cause, the family court had continuing jurisdiction over minors on probationary status pursuant to HRS § 571-31(a) (1993) and was authorized, accordingly, to place

### III. *CONCLUSION*

Based on the foregoing, we dismiss the Minors' appeals.

### Dissenting Opinion by ACOBA, J.

The question raised by petitioner-appellant John Doe, born January 25, 1985 (Minor 1) and petitioner-appellant John Doe, born on January 28, 1983 (Minor 2) (collectively "Minors"), of the extent to which police may detain a minor without a proper determination of probable cause, is 1) of substantial public policy concern, and 2) capable of repetition, yet evading review. Accordingly, I do not believe this appeal is moot.

The purported finding of probable cause on December 6, 2000 to detain the Minors is seemingly bereft of support in the record and, thus, tantamount to no probable cause finding at all. A sworn affidavit was signed by Minors' counsel stating that "no evidence of any kind was presented to [the Family Court of the First Circuit (the court)] to support [a] finding of probable cause[.]" The prosecution did not rebut this declaration. Further, the lack of evidence was seemingly verified by the attempt of the court, at the request of the prosecution, to "cure" that defect by making a determination of probable cause at the December 11, 2000 *habeas corpus* hearing. Obviously, the attempt to cure, having been made five days after arrest, came too late under Hawai'i Revised Statutes (HRS) § 571–32(d) & (e) (1993) or, as argued by Minors' counsel, under the rationale in *County of Riverside v. McLaughlin,* 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991).

The December 6 hearing is not ignored in this opinion's analysis, as the majority contends. *See* majority opinion at 79 n. 12, 73 P.3d at 33 n. 12. The point is that the majority would find no error when the court supposedly found probable cause on December 6, 2000 in the absence of any kind of evidence. *See* majority opinion at 79 n. 12,

73 P.3d at 33 n. 12. That this was the case is not belied by the record, as the majority contends, *see* majority opinion at 79 n. 13, 73 P.3d at 33 n. 13, but, rather, confirmed by the transcript of the *habeas* hearing. The transcript indicates that the prosecution suggested that the court remedy any prior defect by making a probable cause determination at the *habeas* proceeding. The prosecution represented that its customary practice is to not introduce evidence of probable cause on misdemeanor cases, such as the ones involved here, unless specifically requested by a defendant.

Furthermore, I disagree with the majority's statement that "*any defects* in a pretrial determination of probable cause are rendered moot" by either "a subsequent conviction" or a "dismissal of the charges," majority opinion at 78, 73 P.3d at 32 as overly broad and providing little guidance as to what circumstances will allow appellate review.

### I.

The facts of the instant case are relatively straightforward. On December 6, 2000, Minor 1 was arrested for allegedly committing the offense of assault in the third degree, HRS § 707–712(1)(a) (1993). He was brought before the Family Court of the First Circuit (the court)[1] on the same day and denied the allegations. The court ordered Minor 1 detained at Hale Ho'omalu[2] until his trial on December 12, 2000.

Similarly, Minor 2 was arrested on December 5, 2000, and charged as a law violator with respect to the same offense in an unrelated incident. Minor 2 was also brought before the court on December 6, 2000, where he denied the allegations. Again, the court ordered Minor 2 detained at Hale Ho'omalu until trial on December 12, 2000.

On December 7, 2000, the office of the public defender filed separate petitions for

---

them in detention if that was deemed to be in their best interest, because, according to the Minors, "there must be a basis for detention other than the Minor's probation status." Assuming *arguendo* that the Minors are correct, there is no need to review the foregoing conclusion in the present matter, inasmuch as there was a valid

basis for detention other than the Minors' probationary status.

1. The Honorable William J. Nagle, III, presided at this hearing.

2. Hale Ho'omalu is a juvenile detention center.

writs of *habeas corpus* on behalf of both Minors, arguing that they were being illegally detained as there was no evidence presented on December 6 establishing probable cause. A sworn affidavit to this effect was attached. Minors requested that they be released.

On December 11, 2000, five days after Minors had been arrested, the court held a consolidated hearing regarding the petitions.[3] The prosecution argued that Minors had not objected to the court's finding of probable cause and, thus, waived the issue.[4] In the alternative, the prosecution suggested that the court could review the police records and make a hindsight finding of probable cause. An affidavit prepared by the arresting officer was submitted to the court for this purpose.

The court then ruled that, based on its review of the police reports, probable cause existed in both cases:

> The Court has had an opportunity to read the police reports which were proffered this morning for both these kids by [the prosecution].
>
> *At this time for both kids the Court finds probable cause with respect to the Assault Third charges for both kids in their respective cases.*
>
> Insofar as the writ of habeas corpus points to lack of—lack of legal foundation for the probable cause decisions which were made at the time of detention, that's cured. And I do not find that—that an appropriate remedy would be therefore to release the kids. .

(Emphasis added.) The court also held that because the minors were on probation, the court had "independent authority" to hold

3. The Honorable Frances Q.F. Wong presided at this hearing.

4. Minors' counsel argued the finding could not be waived.

5. The court stated as follows:

> I or any other family court judge has jurisdiction, continuing jurisdiction, under their status, which is they're both under probation, to make placement decisions. That is over and above whatever might have been triggered by these new petitions. That's one. And that's both legal, statutorily, as well as constitutional.

both Minors irrespective of whether any new charges had been filed or of any defects regarding those charges.[5]

On December 12, 2000, Minor 1 admitted to the lesser offense of affray, and an order adjudicating him a law violator within the meaning of HRS § 571–11(1) (1993) was entered. On the same day, the charges against Minor 2 were dismissed with prejudice as the prosecution alleged it was not ready to proceed.

## II.

### A.

It is well acknowledged that the Fourth Amendment to the United States Constitution requires prompt determination of probable cause as a prerequisite to prolonged detention following arrest. In *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the United States Supreme Court held that the due process clause of the ·Fourth Amendment requires a prompt determination of "probable cause to believe the suspect has committed a crime" before a suspect can be detained for an extended time. *Id.* at 114, 120, 95 S.Ct. ,854. In *Gerstein,* the Court did not define the word "prompt" in terms of any specific length of time. In *McLaughlin,* however, the Court held that, "[t]aking into account the competing interests articulated in *Gerstein,* we believe that a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein.*"[6] *McLaughlin,* 500 U.S. at 56, 111 S.Ct. 1661.

6. Something less than forty-eight hours may be required to satisfy due process. As the Court said, "[t]his is not to say that the probable cause determination in a particular case passes constitutional muster simply because it is provided within 48 hours." *McLaughlin,* 500 U.S. at 56, 111 S.Ct. 1661. "Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *Id.* "Cases establish that a delay [in holding a probable cause hearing] may be unreasonable if it is motivated by a desire to uncover additional evidence to support the arrest or to use the suspect's presence solely

The United States Supreme Court has never squarely decided whether the rules espoused in *Gerstein* and *McLaughlin* apply to the detainment of juveniles. However, in an analogous case, *Schall v. Martin*, 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984), decided nine years before *McLaughlin*, the Supreme Court explained that "[t]here is no doubt that the Due Process Clause is applicable in juvenile proceedings. 'The problem,' we have stressed, 'is to ascertain the precise impact of the due process requirement upon such proceedings.'" *Schall*, 467 U.S. at 263, 104 S.Ct. 2403 (quoting *In re Gault*, 387 U.S. 1, 13–14, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)). The Court has said in the past that it attempts "to strike a balance—to respect the 'informality' and 'flexibility' that characterize juvenile proceedings, *In re Winship*, 397 U.S. [358], 366, 90 S.Ct. 1068, 25 L.Ed.2d 368 [(1970)], and yet to ensure that such proceedings comport with the 'fundamental fairness' demanded by the Due Process Clause." *Id.* (citing *Breed v. Jones*, 421 U.S. 519, 531, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) and *McKeiver v. Pennsylvania*, 403 U.S. 528, 543, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971)).

In *Alfredo A. v. Superior Court of Los Angeles County*, 6 Cal.4th 1212, 26 Cal. Rptr.2d 623, 865 P.2d 56 (1994)[7], a plurality decision, the California Supreme Court noted that, in *Schall*, "New York's preventative detention statute served the dual legitimate state objectives of protecting both society and the juvenile[.]" *Id.* at 65 (citing *Schall*, 467 U.S. at 264–74, 104 S.Ct. 2403) (Lucas, C.J., with Panelli & Baxter, JJ., concurring). The California court determined that the *Gerstein* probable cause requirement was applicable to juvenile detentions, but held the forty-eight hour rule announced in *McLaughlin* inapplicable. It decided that *"juvenile arrestees* [must] *be afforded a judicial determination of 'probable cause' for any postarrest detention extending beyond the 72–hour period immediately following a warrantless arrest[,]" id.* at 68 (emphasis in original), rather than the forty-eight-hour period established in *McLaughlin*.

In a dissent,[8] however, Justice Mosk observed that *McLaughlin* found that "[a] State has *no legitimate interest* in detaining . . . individuals who have been arrested without probable cause" beyond forty-eight hours. *Id.* at 81, (Mosk, J., dissenting, Kennard and George, JJ., concurring) (quoting *McLaughlin*, 500 U.S. at 55, 111 S.Ct. 1661) (emphasis in original).[9] Thus, the dissent maintained that "[e]xtended restraint for a criminal offense in the absence of probable cause is no more reasonable for juveniles than adults. Arguably less so." *Id.* It was reasoned that the "informality" and "flexibili-

---

to investigate the suspect's involvement in other crimes." *U.S. v. Davis*, 174 F.3d 941, 944 (8th Cir.1999) (citing *McLaughlin*, 500 U.S. at 56, 111 S.Ct. 1661; *Willis v. City of Chicago*, 999 F.2d 284, 288–89 (7th Cir.1993)). Thus, while forty-eight hours is a "general" determination of constitutionality, a more prompt determination may be required depending upon the facts of the individual case.

7. The statute analyzed in *Alfredo A.* differs from HRS § 571–32, discussed *infra*, in that "the inquiry into the propriety of the extended detention is much broader in scope than a determination, in the strict Fourth Amendment sense, of whether 'factual' probable cause exists to believe the minor committed the crime for which he [or she] was taken into custody." *Alfredo A.*, 26 Cal. Rptr.2d 623, 865 P.2d at 61. The *Alfredo A.* statute "lists seven 'conditions,' one or more which must be found to exist in order to warrant detaining the minor and scheduling a detention hearing within 72 hours of his or her arrest[.]" *Id.* In contrast, HRS § 571–32 requires only a finding of probable cause that the minor has violated any federal, state, or local law or munic-

ipal ordinance. *See* HRS §§ 571–32(e) (1993) & 571–11(1) (1993).

8. It appears that the dissent had an equal number of votes as the lead decision. *See Alfredo A.*, 26 Cal.Rptr.2d 623, 865 P.2d at 84 (Mosk, J., dissenting, Kennard and George, JJ., concurring) ("The lead opinion's reasoning does not express the views of a majority of this court. As a result, its analysis lacks authority as precedent . . . and hence cannot bind." (Brackets and citations omitted.)).

9. The dissent also criticized the majority's heavy reliance upon *Schall*, inasmuch as *Schall* interpreted the Fourteenth Amendment, not the Fourth Amendment, *see* 865 P.2d at 79 (Mosk, J., dissenting, Kennard and George, JJ., concurring), concerned "formal, adversarial probable cause hearings, and not the informal, nonadversarial judicial probable cause determinations discussed in *Gerstein* and *McLaughlin* [,]" and "dealt with a situation in which the juvenile was already detained pursuant to court order-unlike the situation here, where he was not." *Id.*

ty" of juvenile proceedings "are designed to make the process *more expeditious* than that of criminal actions, not less[,]" *id.* at 83 (emphasis in original), and, "[t]hus, if any colorable attack could be mounted against *McLaughlin's* definition of 'promptness [as applied to juveniles],' it would be that it is *too long, not too short.*" *Id.* (emphasis in original).

I would adopt the rationale underlying *Gerstein* and *McLaughlin* on independent state constitutional grounds and hold that it applies squarely to the detainment of minors. In my view, at the least, article I, section 7 of our State constitution requires a finding of probable cause by a court in order to justify detaining juveniles.[10] That section independently supports the right of a juvenile, like an adult, to be free from unreasonable detainment.[11] *See State v. Texeira*, 50 Haw. 138, 142, 433 P.2d 593, 597 (1967) ("The federal decisions do not, however, prevent this court from extending greater protection in interpreting the state constitution where we determine it to be appropriate."); *see also In re John Doe, Born on June 16, 1955*, 54 Haw. 647, 651, 513 P.2d 1385, 1388 (1973) (recognizing that in regards to due process rights there is little "distinction[ ] between juveniles and adults in terms of constitutional protections"); *cf. In re Jane Doe, Born on May 5, 1977*, 77 Hawai'i 435, 436, 887 P.2d 645, 646 (1994) (holding that "children in school have legitimate expectations of privacy that are protected by article I, section 7 of the Hawai'i Constitution"). Accordingly, in the absence of a finding of probable cause, extended detainment of juveniles must generally be deemed unlawful.

### B.

But the *McLaughlin* rationale aside, it is evident that in Hawai'i, HRS § 571–32, subsections (d) and (e), as argued by Minors, set forth a shorter period in which probable cause must be established by a court. That statute indicates that probable cause must be determined within twenty-four hours when a child is held in a juvenile detention facility, as was the case here:

(d) *No child shall be held in detention facility for juveniles* or shelter *longer than twenty-four hours, excluding weekends and holidays,* unless a petition or motion for revocation of probation, or motion for revocation of protective supervision has been filed, or unless the judge orders otherwise after a court hearing. No ex parte motion shall be considered. *If there is probable cause to believe that the child comes within section 571–11(1),*[12] the child

---

10. Article I, section 7 of the Hawai'i State Constitution states that

[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

11. *McLaughlin* held that after forty-eight hours the burden shifted to the government to demonstrate a "bona fide emergency or other extraordinary circumstance" in the event of a longer detention.

Where an arrested individual does not receive a probable cause determination within 48 hours, the calculus changes. *In such a case, the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance.* The fact that in a particular case it may take longer than 48 hours to consolidate pretrial proceedings does not qualify as an extraordinary circumstance. Nor, for that matter, do intervening weekends. A jurisdiction that chooses to offer combined proceedings must do so as soon as is reasonably feasible, but in no event later than 48 hours after arrest.

*McLaughlin*, 500 U.S. at 57, 111 S.Ct. 1661 (emphasis added).

12. HRS § 571–11 states, in pertinent part, as follows:

Except as otherwise provided in this chapter, the court shall have exclusive original jurisdiction in proceedings:

(1) *Concerning any person who is alleged to have committed an act prior to achieving eighteen years of age which would constitute a violation or attempted violation of any federal, state, or local law or municipal ordinance.* Regardless of where the violation occurred, jurisdiction may be taken by the court of the circuit where the person resides, is living, or is found, or in which the offense is alleged to have occurred.

(2) Concerning any child living or found within the circuit:

may be securely detained in a certified police station cellblock or community correctional center. The detention shall be limited to six hours. In areas which are outside a standard metropolitan statistical area, the detention may be up to twenty-four hours, excluding weekends and holidays, if no detention facility for juveniles is reasonably available. Any detention in a police station cellblock or community correctional center shall provide for the sight and sound separation of the child from adult offenders.

(e) *No child may be held after the filing of a petition or motion,* as specified in subsection (d) of this section, *unless an order for continued detention or shelter has been made by a judge after a court hearing. If there is probable cause to believe that the child comes within section 571–11(1),* the child may be securely detained, following a court hearing, in a detention facility for juveniles or may be held in a shelter. *If there is probable cause to*

 (A) Who is neglected as to or deprived of educational services because of the failure of any person or agency to exercise that degree of care for which it is legally responsible;
 (B) Who is beyond the control of the child's parent or other custodian or whose behavior is injurious to the child's own or others' welfare;
 (C) Who is neither attending school nor receiving educational services required by law whether through the child's own misbehavior or nonattendance or otherwise; or
 (D) Who is in violation of curfew.
(Emphasis added.)

13. Minors also contend that Hawai'i Rules of Penal Procedure (HRPP) Rule 5(a)(2) is applicable. This rule states, in relevant part, as follows:

PROBABLE CAUSE DETERMINATION UPON ARREST WITHOUT A WARRANT. As soon as practicable, and, Rule 45 notwithstanding, not later than 48 hours after the warrantless arrest of a person held in custody, a district judge shall determine whether there was probable cause for the arrest. No judicial determination of probable cause shall be made unless there is before the judge, at the minimum, an affidavit of the arresting officer or other person making the arrest, setting forth the specific facts to find probable cause to believe that an offense has been committed and that the arrested person has committed it. If probable cause is found as aforesaid, an appropriate order shall be filed with the court

believe that the child comes within section 571–11(2), or section 281–101.5, the child may be held, following a court hearing, in a shelter *but may not be securely detained in a detention facility for juveniles for longer than twenty-four hours, excluding weekends and holidays,* unless the child is subject to the provisions of chapter 582, Interstate Compact on Juveniles, or is allegedly in or has already been adjudicated for a violation of a valid court order, as provided under the federal juvenile Justice and Delinquency Prevention Act of 1974, as amended.

(Emphases added.) Thus, there are both constitutional and statutory grounds for the Minors' challenge of the court's failure to determine probable cause within the appropriate period of time.[13]

### III.

In the instant case, it is apparent that Minors were detained beyond the twenty-

as soon as practicable. *If probable cause is not found, or a proceeding to determine probable cause is not held within the time period provided by this subsection, the arrested person shall be ordered released and discharged from custody.*
(Emphasis added.) However, HRPP Rule 54(b) states that

[t]hese rules shall not apply to extradition and rendition of fugitives; forfeiture of property for violation of law; the collection of fines and penalties; contempt proceedings which are treated by the court as petty misdemeanors; *family court proceedings under section 571–11 of Hawaii Revised Statutes;* and statutory proceedings in which a specific procedure is provided for as part of the statute creating the offense.
(Emphases added.) Although HRPP Rule 54(b) appears to restrict the application of the rules of penal procedure, the Intermediate Court of Appeals has held that in the "absence of comparable rules in the Hawai'i Family Court Rules, this court has approved of the use of HRPP rules in HRS chapter 571 proceedings." *In re John Doe, born on October 26, 1977,* 79 Hawai'i 265, 272, 900 P.2d 1332, 1339 (1995). Analogous to the instant case, it was held there that "[a] hearing to determine delinquency need not conform with all the requirements of a criminal trial; but the procedures employed *must measure up to the essentials of due process and fair treatment." Id.* (brackets, citations, and ellipsis points omitted). In this case, there are allegations of a violation of Minors' rights which are not addressed by the family court rules.

four hours set forth in HRS § 571–32(e). Although a hearing was held on December 6 after their arrest, there is no record that evidence was submitted to establish probable cause at the hearing.[14] As mentioned, during the December 11, 2000 *habeas corpus* hearing, the prosecution did not rebut the sworn affidavit to the effect that no evidence was submitted. The deputy prosecuting attorney (the DPA) at the *habeas* hearing expressly stated that he spoke to the DPA who was present at the December 6 hearing. Despite the fact that it was the central issue during the December 11 *habeas corpus* hearing, not once did the. prosecution indicate that evidence establishing probable cause had been introduced at the December 6 hearing. In fact, the DPA observed that the normal practice for the prosecution is to not introduce evidence in misdemeanor cases unless the defendant requests the evidence to be submitted. Accordingly, the only issue the DPA raised in regards to the December 6 hearing was whether the alleged failure to object to the finding of probable cause waived that issue. Moreover, the prosecution, in its answering brief, never raised the issue of whether evidence had been submitted at the December 6 hearing. *See* Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7) ("Points not argued may be deemed waived.").

On the record before us, probable cause was not established until the *habeas corpus* hearing on December 11, 2000. The prosecution presented no evidence to demonstrate that there was a bona fide emergency or extraordinary circumstances to justify this prolonged detention without a probable cause determination. *See supra* note 11.

## IV.

The majority states that "we are unable to discern how the alleged delay in a proper finding of probable cause might have prejudiced the Minors[,]" majority opinion at 83 n. 9, 73 P.3d at 37 n. 9, and applies a harmless

error standard to the constitutional violation. This analysis, however, runs counter to the express language in *McLaughlin* that "[a] state has *no legitimate interest* in detaining for extended periods individuals who have been arrested without probable cause." 500 U.S. at 55, 111 S.Ct. 1661 (emphasis added). Here, the Minors were apparently held for five days without the establishment of probable cause. To apply a harmless error standard under such circumstances would be to, in effect, hold· that the prosecution could detain an individual without a probable cause finding as any appeal would be rendered moot by the passage of time. As stated by Justice Scalia, who advocated a shorter twenty-four hour period in his dissent to *McLaughlin,* "[t]he common-law rule of *prompt* hearing had as its primary beneficiaries the innocent [—] those so blameless that there was not even good reason to arrest them." *Id.* at 71, 111 S.Ct. 1661 (Scalia, J., dissenting).

Here, there was clear prejudice to Minors as the prosecution was allowed to detain them without any showing of probable cause, denying them the right to liberty *and* to a prompt probable cause determination, *see Blumel v. Mylander,* 954 F.Supp. 1547, 1559 (M.D.Fla.1997) (explaining that "[i]t is the plaintiff's right to a probable cause determination that was unconstitutionally deprived"), which in my view is a violation of HRS § 571–32 and the Hawai'i Constitution. There is more than a substantial likelihood that a violation of legal rights will reoccur unless this court exercises jurisdiction to decide the merits of the question presented in this appeal. Therefore, the application of the harmless beyond a reasonable doubt rule, *see* majority opinion at 83 n. 9, 73 P.3d at 37 n. 9, in the face of the mootness exception concerned here, *see infra* Part IX., would be erroneous.

## V.

The subsequent finding of probable cause at the *habeas corpus* hearing did not correct

14. The majority observes that Minors failed to submit a transcript of the original hearing held on December 6, 2000, and that it is "impossible for [this court] to determine whether there is any merit to the Minor's contention[,]" majority opinion at 84–85 n. 13, 73 P.3d at 38–39 n. 13,

namely that there was no evidence submitted at this hearing. However, inasmuch as it was not contested that no evidence was submitted, I believe this court may consider the original hearing on that basis as did the parties and the court below.

the failure to hold a proper probable cause hearing. *See Black v. State,* 871 P.2d 35, 39 (Okla.Crim.App.1994) ("Nor do we believe an untimely probable cause hearing retroactively 'cures' the time spent without such a hearing, any more than a bad search can later be justified if it proves fruitful." (Citing *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).)). The right at stake is a procedural due process right, namely that a hearing be held within forty-eight hours. *See Blumel v. Mylander,* 954 F.Supp. at 1559 ("It is the plaintiff's right to a probable cause determination that was unconstitutionally deprived, not his right to liberty."). Thus, the determination of probable cause after the forty-eight-hour period or any otherwise applicable period had expired, could not have cured the violation. Accordingly, I would hold that the court erred in determining that a subsequent finding of probable cause corrected the initial failure to find probable cause within the appropriate period.

## VI.

Although I believe the court sought to act in the best interest of the parties, I do not believe that the court could properly detain Minors on the basis of their probationary status. Pursuant to HRS § 571–31 (1993), a child

> may be taken into custody by any police officer without order of the judge *where there are reasonable grounds to believe that a child comes within section 571–11(1) or (2),* or by any police or probation officer when there are reasonable grounds to believe that the child has violated a court order of probation or protective supervision.

(Emphasis added.) However, as above, HRS § 571–32(d) and (e) mandates that a hearing be held within twenty-four hours to justify continued detention. A child's probationary status does not change this requirement.

While the court may exercise its authority to order placement of minors on probation, it must do so pursuant to HRS § 571–50 (1993), which requires prior notice and a hearing.[15] The record does not indicate that such a procedure was followed in order to modify the terms of the probation. Accordingly, the court lacked the authority to order detainment on the basis of Minors' probationary status.

## VII.

Because I would reach the merits of this appeal, it is necessary to consider the constitutionality of HRS § 571–32(e). I believe it was plain error to overlook a constitutional flaw in a governing statute. *See* HRAP Rule 28(b)(4) (stating that an "appellate court, at its option, may notice a plain error not presented"); *see also State v. McGriff,* 76 Hawai'i 148, 155, 871 P.2d 782, 789 (1994) (noting that this court may *sua sponte* notice plain errors affecting an accused's substantial rights) (citing *State v. Grindles,* 70 Haw. 528, 530, 777 P.2d 1187, 1189 (1989)).

Under HRS § 571–32, a juvenile detained on a Friday evening preceding a weekend or a holiday may be detained for longer than forty-eight hours without a finding of probable cause. The statute prohibits detention for longer than twenty-four hours but, in doing so, allows the exclusion of weekends and holidays in the computation. *McLaughlin* held that "[w]here an arrested individual does not receive a probable cause determination within 48 hours, the burden of proof shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance, *which cannot include intervening weekends* or the fact that in a particular case it may take longer to consolidate pretrial proceedings." *McLaughlin,* 500 U.S. at 45, 111 S.Ct. 1661 (emphasis added). Thus, HRS § 571–32 ap-

---

**15.** HRS § 571–50 states, in pertinent part, as follows:

> At any time during supervision of a child the *court may issue notice or other appropriate process* to the child if the child is of sufficient age to understand the nature of the process, to the parents, and to any other necessary parties to

> appear at a hearing on a charge of violation of the terms of supervision, *for any change in or modification of the decree or for discharge.* The provisions of this chapter relating to process, custody, and detention at other stages of the proceeding shall be applicable.
> (Emphases added.)

pears to conflict with the rationale underlying *McLaughlin*.

## VIII.

Although the majority professes to leave questions concerning the effect of a defective probable cause finding to other appeals, *see* majority opinion at 83 n. 7, 73 P.3d at 37 n. 7, it adopts the general proposition that a defect in a pretrial determination of probable cause is rendered moot by a subsequent conviction or dismissal.[16] I take issue with this conclusion not because the parties raise it, *see* majority opinion at 83 n. 7, 73 P.3d at 37 n. 7, but because the majority introduces it. I believe this proposition is unnecessary to the resolution of the instant case, is contrary to established case law, and will lead to uncertain application in future cases.

First, it must be observed that the cases cited by the majority do not support its proposition that any defects are rendered *moot* by subsequent events. Rather, these cases support an opposing conclusion, namely, that courts maintain jurisdiction, but that the *remedy* for a defective probable cause hearing may not require the reversal of a valid conviction or release.[17] For example, in *Blue v. United States*, 342 F.2d 894 (D.C.Cir. 1964), a case cited by the majority, the D.C. Circuit Court of Appeals considered whether a defendant could waive a preliminary hearing without being notified that he or she could be provided an attorney. It expressly held that "the uncounselled status of this appellant when he waived preliminary hearing ... infected that waiver." *Id.* at 899. After making this determination, the *Blue* court concluded that it could not "find that the Commissioner's failure to accord appellant a meaningful opportunity to elect to

have a preliminary hearing ... so handicapped him in his first trial as to require a second." *Id.* at 901. Thus, the *Blue* court did not hold that a conviction or release automatically deprives an appellant of review on the basis of mootness, but that under the facts a new trial was not required. Most of the majority's other cases are similar. *See Bell v. Dillard Dept. Stores, Inc.*, 85 F.3d 1451, 1459 (10th Cir.1996) (concluding that the defendant did not have "a full and fair opportunity to litigate the issue" of probable cause and that a municipal court's finding of probable cause "do[es] not preclude [defendant] from litigating the issue of probable cause for his arrest in the instant case"); *State v. Mitchell*, 104 Idaho 493, 660 P.2d 1336, 1343 (1983) (explaining that "even if the magistrate erred in relying on evidence at the preliminary hearing that is ultimately determined to be inadmissible, the error is not a ground for vacating a conviction where the appellant received a fair trial and was convicted, and there is sufficient evidence to sustain the conviction"); *Commonwealth v. McCullough*, 501 Pa. 423, 461 A.2d 1229, 1231 (1983) (refusing to reverse a conviction of murder because of a defective hearing); *cf. Spriggs v. Wilson*, 467 F.2d 382, 388 (D.C.Cir.1972) (dismissing as moot based upon the "District Court's *discretion* to refuse to grant declaratory relief[,]" (emphasis added), and because "no useful purpose would be served by granting the declaratory judgment requested here").

Only two of the cases cited by the majority stand for the proposition that a probable cause hearing defect is moot on appeal following a subsequent conviction. *See State v. West*, 223 Neb. 241, 388 N.W.2d 823, 829 (1986) ("It is the general rule that any error by the district court in ruling on a plea in

---

16. Specifically, the majority states that
 it is widely acknowledged in other jurisdictions that, absent unusual circumstances, *any defects in a pretrial determination of probable cause are rendered moot*, or are without effective remedy, which is much the same thing, by a subsequent conviction ... or a dismissal of the charges[.] Majority opinion at 83, 73 P.3d at 37 (emphasis added) (footnote and citations omitted).

17. The majority misconstrues this statement to imply that this opinion argues that a lack of

remedy supports a finding of jurisdiction. *See* majority opinion at 83 n. 6, 73 P.3d at 37 n. 6. Rather, the observation here is that there is little or no support for the majority's conclusion that defects in a pretrial determination are rendered moot by subsequent events. The cases cited by the majority, quite simply, stand for the contrary proposition that a court should take jurisdiction and review the case before determining the question of a remedy.

abatement[18] is cured by a subsequent finding by the jury of guilt beyond a reasonable doubt."); *People v. Alexander*, 663 P.2d 1024, 1025 n. 2 (Colo.1983) (*en banc*) ("[a]bsent unusual circumstances not present here, however, any issue as to the presence of probable cause is rendered moot by the guilty verdict.").[19]

Second, as stated earlier, the majority's statement has little basis in the law and conflicts with a majority of jurisdictions. For example, a claim for damages under 42 U.S.C. § 1983[20] is allowed subsequent to an unlawful detainment. *See, e.g., Blumel*, 954 F.Supp. at 1555–56 (finding liability where plaintiff had been held "a full twenty-eight (28) days past the point in time at which he was **constitutionally entitled** to a judicial determination of probable cause" (boldfaced font in original)); *Lambert v. McFarland*, 612 F.Supp. 1252, 1262 (N.D.Ga.1984) (finding liability as a matter of law, where a plaintiff was detained for nearly six weeks awaiting a probable cause hearing); *cf. Rivas v. Freeman*, 940 F.2d 1491, 1492 (11th Cir.1991) (awarding damages "where an arrest and incarceration resulted from misidentification" for a period longer then forty-eight hours).

Likewise, evidence obtained as the result of an unlawful detainment is suppressed. *See, e.g., United States v. Davis*, 174 F.3d 941, 946 (8th Cir.1999) (suppressing evidence because a "probable cause determination was unreasonably delayed by the officers' attempts to investigate [defendant's] role in additional crimes"); *Willis v. City of Chicago*, 999 F.2d 284, 288–89 (7th Cir.1993) (awarding damages where a suspect "was detained solely to permit the police to place him in lineups relating to other uncharged crimes"); *Kanekoa v. City & County of Honolulu*, 879 F.2d 607, 612 (9th Cir.1989) (explaining that "the fourth amendment does not permit the police to detain a suspect merely to investigate"); *Tross v. Commonwealth*, 21 Va.App. 362, 464 S.E.2d 523, 529 (1995) (citing several cases for the proposition that evidence obtained during an illegal detention may be suppressed); *State v. K.K.H., B.D. 12–18–77*, 75 Wash.App. 529, 878 P.2d 1255, 1257 (1994) (discussed *infra*), *reconsideration denied*, 75 Wash.App. 529, 878 P.2d 1255 (1994), *review denied*, 126 Wash.2d 1015, 894 P.2d 565 (1995).

Under the majority's holding, such claims could be considered moot on appeal if there was either a "subsequent conviction" or "a dismissal of charges."[21] Plainly, other jurisdictions have not adopted this holding, nor should this court. Thus, I cannot agree with the overly broad statement adopted by the majority.[22]

---

**18.** *Black's Law Dictionary* 1151–52 (6th ed.1990) states that a "plea on abatement" has been replaced by a motion in those states that have adopted or patterned rules on the Federal Rules of Civil Procedure.

**19.** Even these cases are somewhat suspect. Other courts have cited *Alexander* for a contrary holding, namely that a conviction could not be overturned because of a probable hearing defect, but that the merits of the case could be reviewed. *See State v. Butler*, 257 Kan. 1043, 897 P.2d 1007, 1021 (1995) (citing *Alexander* for the proposition that "[o]ther states have applied a harmless error standard when a defendant has been improperly bound over for trial after a preliminary hearing."); *People v. Hall*, 435 Mich. 599, 460 N.W.2d 520, 526 (1990) (citing *Alexander* and stating that "automatic reversal is not warranted in the present circumstances"); *cf. Trujillo v. State*, 880 P.2d 575, 582 (Wyo.1994) (citing *Alexander* for the proposition that objections raised only on appeal are considered waived).

As to *West*, it is uncertain what procedure is followed in a plea of abatement, or whether this hearing would be comparable to a preliminary hearing as required in *Gerstein* and *McLaughlin*.

**20.** "State courts have concurrent jurisdiction over federal damage claims under 42 U.S.C. § 1983 (1976)." *Makanui v. State.*, 6 Haw.App. 397, 403, 721 P.2d 165, 170 (1986) (citations omitted)

**21.** The majority utilizes the qualifier "absent unusual circumstances[,]" majority opinion at 82, 73 P.3d at 36, in this statement. But without a definition of an "unusual circumstance[,]" this phrase does little to restrict the broad application of the conclusion that an appellate court lacks jurisdiction over the failure to hold, or a defect in, a probable cause hearing.

**22.** It should be observed that most courts do not void a subsequent conviction simply because of an unlawful detention. *See Gerstein*, 420 U.S. at 119, 95 S.Ct. 854 (explaining that "an illegal arrest or detention does not void a subsequent conviction"); *see also State v. Furuyama*, 64 Haw. 109, 121–22, 637 P.2d 1095, 1103 (1981)

# 90

## IX.

This case plainly falls within two exceptions to the mootness doctrine. First, it involves a substantial public policy question of the extent to which the police may detain juveniles without a probable cause determination. Second, that question would evade review because of the temporary nature of unlawful detainments.[23]

Our jurisprudence supports two exceptions to the mootness doctrine. The first exception involves matters involving substantial "public interest."[24] Similarly, a second exception exists where the controversy is "capable of repetition, yet evading review." *Life of the Land v. Burns*, 59 Haw. 244, 251, 580 P.2d 405, 409 (1978) (quoting *Valentino v. Howlett*, 528 F.2d 975, 979–80 (7th Cir. 1976)).

## A.

Manifestly, the exercise of police power to detain a juvenile is a matter of substantial

(quoting *Gerstein* for the proposition that an illegal arrest does not bar a subsequent conviction); *but see Powell v. Nevada*, 511 U.S. 79, 84, 114 S.Ct. 1280, 128 L.Ed.2d 1 (1994) (expressly refusing to examine the question of an appropriate remedy for a delay in determining probable cause, "an issue not resolved by *McLaughlin*"). In *Tross*, the Virginia court observed that

> [a] majority of state and federal courts have relied upon *Gerstein* in holding that an illegal arrest or detention does not void a subsequent conviction. *See, e.g., Seabolt v. Hopper*, 240 Ga. 171, 240 S.E.2d 57, 58 (1977) (defendant arrested pursuant to warrant issued by justice of the peace under an invalid fee system); *Tommie v. State*, 158 Ga.App. 216, 279 S.E.2d 510, 512 (1981) (defendant returned to state under warrant alleging offense other than one for which he was subsequently convicted); *Commonwealth v. Sudler*, 496 Pa.Super. 64, 649 A.2d 129, 134 (1994) (magistrate not detached and neutral because of quasi-familial relationship with victim), *appeal denied*, 540 Pa. 612, 656 A.2d 118 (1995); *State v. Schreuder*, 712 P.2d 264, 270–72 (Utah 1985) (probable cause statement supporting arrest warrant failed to reveal source of information or any basis for determining the credibility or reliability of the source).

464 S.E.2d at 529. Hence, although I would hold that claims based on unlawful detainment are not moot, I would not suggest that such a claim, if successful, necessarily invalidates any subsequent conviction. *See Furuyama*, 64 Haw. at 122, 637 P.2d at 1104 (explaining that the

public concern. This court has emphasized that "[t]he power of arrest is an awesome one and is subject to abuse." *State v. Lloyd*, 61 Haw. 505, 511, 606 P.2d 913, 918 (1980) (quoting *United States v. Santana*, 427 U.S. 38, 48, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976) (Marshall, J., dissenting)). "[A]ny policy encouraging the police to engage in unnecessarily prolonged detentions would have a serious impact on the liberty interests of those detainees." *Ruf v. Honolulu Police Dept.*, 89 Hawai'i 315, 317, 972 P.2d 1081, 1093 (1999). Hence, a "democratic society, in which respect for the dignity of all men is central, naturally guards against the misuse of the law enforcement process." *Gerstein*, 420 U.S. at 118, 95 S.Ct. 854 (quoting *McNabb v. United States*, 318 U.S. 332, 343, 63 S.Ct. 608, 87 L.Ed. 819 (1943)). The impact on a minor is no less detrimental:

> [T]he need for a very prompt judicial determination of probable cause may be a more crucial factor in assessing the 'reasonableness' of the 'seizure' of a juvenile than of an adult, because the consequences

court "regard[s] the drastic step of barring a prosecution altogether to remedy governmental irregularity in bringing a defendant to trial an undue 'interference with the public interest in having the guilty brought to book'" (quoting *United States v. Blue*, 384 U.S. 251, 255, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966))).

23. For instance, the instant appeal involves unlawful detainment in two separate situations arising independently of each other.

24. As stated in *Johnston v. Ing*, 50 Haw. 379, 441 P.2d 138 (1968),

> [t]here is a well settled exception to the rule that appellate courts will not consider moot questions. When the question involved affects the public interest, and it is likely in the nature of things that similar questions arising in the future would likewise become moot before a needed authoritative determination by an appellate court can be made, the exception is invoked.
>
> Among the criteria considered in determining the existence of the requisite degree of public interest are the public or private nature of the question presented, the desirability of an authoritative determination for the future guidance of public officers, and the likelihood of future recurrence of the question.

*Id.* at 381, 441 P.2d at 140 (internal quotation marks omitted) (quoting *In re Brooks' Estate*, 32 Ill.2d 361, 205 N.E.2d 435, 437–38 (1965) (other citations omitted) (emphases added)).

of even a relatively brief wrongful incarceration are likely to be more detrimental and long-lasting to an innocent, vulnerable child than to an innocent adult.

*Alfredo A.*, 26 Cal.Rptr.2d 623, 865 P.2d at 85–86 (George, J., dissenting).

In an analogous case, the Court of Appeals of Washington considered challenges[25] regarding predetention hearing practices involving three juveniles and held that the court "will address the issues notwithstanding their mootness because ... [it] find[s] that they are of *substantial and continuing public interest.*"[26] *K.K.H.*, 878 P.2d at 1256 (emphasis added) (citing *In re Swanson*, 115 Wash.2d 21, 793 P.2d 962, 964 (1990) ("This court may decide a moot case if it involves matters of continuing and substantial public interest."))[27]. In *K.K.H.*, the Washington court noted, as in the instant case, that "[t]he challenges here are to practices and procedure which allegedly improperly delayed the juveniles' preliminary appearances after arrest." *Id.* at 1257. While the *K.K.H.* court recognized that the case was moot as to the minors because "none [currently] remain in detention or otherwise suffer disability as a direct result of the challenged procedures[,]" and subsequent to their appeal, the statute regarding probable cause determinations had been amended, it addressed the issue as it was of "substantial and continuing public interest." *Id.* at 1256. It was acknowledged that that court was "called upon to review not only practices that may not be occurring

presently, but also claims that are based on a juvenile court rule that has since been amended[.]" *Id.* Nevertheless, the appeals court proceeded to decide that the practice of cancelling a probable cause hearing where a prosecutor had filed a prior information violated a minor's right to have a determination within forty-eight hours. *See id.* at 1258 (citing *Gerstein*, 420 U.S. at 117, 95 S.Ct. 854). The Washington court concluded that "[w]ith the above concerns expressed, the appeals are dismissed." *Id.* at 1259.[28] As in Washington, the detainment of juveniles in Hawaiʻi in purported violation of their due process rights presents a matter of substantial and continuing public interest that warrants a decision on the merits.

### B.

This case also presents issues "capable of repetition yet evading review." This test does not demand certainty, but only the *likelihood* that "similar questions *arising in the future would likewise become moot* before a needed authoritative determination by the appellate court can be made." *Okada Trucking Co. v. Board of Water Supply*, 99 Hawaiʻi 191, 198 n. 8, 53 P.3d 799, 806 n. 8 (2002) (emphasis and brackets omitted) (emphasis added) (quoting *Johnston v. Ing*, 50 Haw. 379, 381, 441 P.2d 138, 140 (1968)).

The legal issues posed in this case are likely to arise again. Both Minors were de-

---

**25.** In *K.K.H.*, the three minors challenged three practices. The first practice was the "use of a telephone conference between the prosecutor and the judge for the purpose of determining probable cause." 878 P.2d at 1258. "The juvenile is not present during this conference. The juvenile's counsel is not permitted to participate in the conference although he or she may be present with the prosecutor while the conference is taking place." *Id.* The second practice occurred when the prosecutor "file[d] an information" before the juvenile received a probable cause determination, resulting in "the probable cause determination [being] stricken [and] ... depriv[ing] the juvenile] of a probable cause determination within 48 hours of his or her arrest." *Id.* The final challenge was to *ex parte* bench warrants that did not meet the requirement of a probable cause determination. *Id.*

**26.** The court went on to note that "in order to best serve the public interest in our resolution of

the issues, we will analyze them in light of the current version of ... [the statutory law] and not the version in effect over 2 years ago when the juveniles filed their motion for ... review." *K.K.H.*, 878 P.2d at 1256.

**27.** In *In re Swanson*, the Washington court stated that it utilizes the following factors to determine whether a public interest is of a substantial nature: "(1) the public or private nature of the question presented; (2) the desirability of an authoritative determination which will provide future guidance to public officers; and (3) the likelihood that the question will recur." 793 P.2d at 964 (quoting *Dunner v. McLaughlin*, 100 Wash.2d 832, 676 P.2d 444, 448 (1984)).

**28.** Presumably, the effect of the decision was similar to a declaratory ruling, where the court indicated the future disposition of like cases.

tained in the same fashion. As stated earlier, during the *habeas corpus* hearing the prosecutor observed that the standard practice for misdemeanor cases was that the police would submit evidence regarding probable cause only if requested by the defendant. Thus, it is likely that the same question will be raised again. Morever, illegal detainments are likely to evade review. As the Court explained, the question of pretrial detention is *not* treated as moot because of its temporary nature:

> *Pretrial detention is by nature temporary,* and it is most unlikely that any given individual could have his [or her] constitutional claim decided on appeal before he [or she] is either released or convicted. The individual could nonetheless suffer repeated deprivations, and it is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures. *The claim, in short, is one that is distinctly "capable of repetition, yet evading review."*

*Gerstein,* 420 U.S. at 111, 95 S.Ct. 854 (emphases added); [29] *see also Schall,* 467 U.S at 256 n. 3, 104 S.Ct. 2403.

Thus, pretrial detention of juveniles is a matter of substantial public interest and presents issues that would evade review because of the temporary nature of such custody. In order to prevent detention violations, this court must be able to review these types of cases.

## X.

Accordingly, I must respectfully dissent from the majority's disposition and analysis in this case.

---

**29.** It should be observed that both *Gerstein* and *McLaughlin* are distinguishable from the present case in that they involved civil class actions. Accordingly, although the individual cases may have been moot, the impact of unlawful detainment on the class members still presented a live controversy.